498 S.E.2d 1

Delbert J. HARTWELL, Plaintiff
Below, Appellee,

v.

Diane C. MARQUEZ, Defendant
Below, Appellee,

Gallant Insurance Company, Appellant.

No. 24124.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 10, 1997.

Rehearing Denied Nov. 21, 1997.

As Modified Nov. 21, 1997.

**434**

Lane O. Austin, Sanders, Austin, Swope & Flanigan, Princeton, for Appellee, Delbert J. Hartwell.

Daniel R. Schuda, Ancil G. Ramey, Steptoe & Johnson, Charleston, for Appellant.

DAVIS, Justice:

Gallant Insurance Company appeals the denial of its Rule 60(b) [1] motion to set aside a default judgment and a resulting monetary judgment in the amount of $449,067.55 entered against defendant below Diane Marquez, and in favor of appellee Delbert J. Hartwell, plaintiff below, by the Circuit Court of Mercer County. The underlying personal injury action arose from an automobile accident wherein Hartwell was struck by a vehicle driven by Marquez. Gallant contends that the default judgment should be set aside on three grounds. First, Gallant argues that substituted service of process made pursuant to W. Va.Code § 56–3–31 (1990) (Repl.Vol.1997) was ineffective, because Gallant did not insure either the driver or the owner of the vehicle that struck Hartwell *at the time it received substituted service of process.* Gallant next declares that W. Va. Code § 56–3–31, which allows substituted service of process on an insurer as attorney-in-fact for a nonresident motorist insured, is unconstitutional insofar as it (1) permits the exercise of personal jurisdiction based upon service of process on an insurance company that has no contractual relationship with the nonresident motorist at the time of service, and (2) fails to require that the insurance company notify its insured that a suit has been filed against him/her. Finally, Gallant argues that the default judgment should be set aside because the plaintiff failed to serve Gallant with notice of the motion for default judgment and with notice of the inquiry regarding Hartwell's damages. We find no error. Therefore, we affirm the default judgment granted by the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case arose from an automobile accident that occurred on or about November 4,

---

**1.** Rule 60(b) of the West Virginia Rules of Civil Procedure enumerates the grounds for which a party may move for relief from a judgment or order. For further treatment of this Rule, *see infra* note 7.

1994, while Delbert Hartwell [hereinafter Hartwell], appellee and plaintiff below, was attempting to repair his truck. The truck had broken down. It was parked on the north-bound shoulder of U.S. Rt. 19 near Princeton, West Virginia. Hartwell apparently was standing by the left front fender of the truck engaged in his attempted repairs when Diane Marquez [hereinafter Marquez], who was traveling south on U.S. Rt. 19, lost control of the vehicle she was driving. Marquez crossed the median and struck Hartwell and the truck. As a result of the accident, Hartwell suffered substantial injuries to his left leg. The automobile driven by Marquez was owned by Dwight L. Cecil [hereinafter Cecil]. According to the record, Cecil had a contract of automobile or liability insurance with Gallant Insurance Company [hereinafter Gallant][2] at the time of the accident. The policy listed "Diane Marquey" as an authorized driver of the vehicle. Both Marquez and Cecil are residents of Illinois. Their whereabouts are otherwise unknown.

By letters to Gallant dated December 1, 1994, December 27, 1994, and January 13, 1995, counsel for Hartwell disclosed his representation of Hartwell with regard to the accident of November 4, 1994. Hartwell's counsel also requested that Gallant provide the policy limits of any liability coverage available to Cecil and Marquez. Subsequently, on February 2, 1995, having received no response from Gallant, Hartwell filed his complaint against Marquez in the Circuit Court of Mercer County. Because Marquez was a nonresident motorist, the Secretary of State, on February 6, 1995, received service of process as her agent pursuant to W. Va. Code § 56–3–31(e) (1990) (Repl.Vol.1997). Notice of service and a copy of the summons and complaint were sent to Marquez by certified mail, return receipt requested, on February 7, 1995. However, on March 9, 1995, the Secretary of State notified the Clerk of

the Circuit Court of Mercer County that the certified mail to Marquez had been unclaimed. On March 24, 1995, substituted service was accepted by the Secretary of State on behalf of Gallant. The Secretary then forwarded the notice of service, summons, complaint and plaintiff's interrogatories to Gallant by certified mail, return receipt requested, pursuant to W. Va.Code § 56–3–31(g). In due course, the return receipt was received by the Secretary of State. It was signed by Brian Hallberg on behalf of Gallant, and was dated March 28, 1995. Thereafter, on April 10, 1995, Gallant responded to the letters previously sent by counsel for Hartwell. Gallant disclosed that the bodily injury liability limits of Cecil's policy were $20,000 per person and $40,000 per accident. The property damage liability was limited to $15,000 per accident. Gallant also stated that it was attempting to verify whether Marquez was covered by any other liability insurance policies. The letter made no reference to the pending civil action. However, the bottom of the letter contained the following notation:

cc: James Henderson

    Abrams, Byron, Henderson & Richmond

It is noteworthy that this letter was the only written communication Hartwell or his counsel received from Gallant prior to the time Gallant filed its motion to set aside the default judgment.[3]

Gallant subsequently failed to file an answer to Hartwell's complaint within thirty days of receiving service of process. Accordingly, on May 16, 1995, Hartwell's counsel tendered to the circuit court his "Affidavit of Failure to Plead or Otherwise Defend in Support of Plaintiff's Application for Entry of Default Judgment," pursuant to W. Va.Code § 56–3–31(g). Counsel also moved for default judgment against Marquez on the issue of liability and requested the court to sched-

---

2. The policy was actually issued to Cecil by Allied American Insurance Company. However, a sworn affidavit filed in the circuit court on July 16, 1996, stated that Allied American Insurance Company changed its name to Gallant Insurance Company effective July 10, 1995. Therefore, for ease of reference, we will hereinafter use "Gallant" to refer to both Allied and Gallant.

3. The only additional communication indicated by the record is a telephone call that apparently preceded the first letter Hartwell's counsel sent to Gallant. Whether or not additional telephone communications were had by Gallant and counsel for Hartwell cannot be determined from the record.

ule an inquiry as to Hartwell's damages. By order entered May 17, 1995, the circuit court, observing that "pursuant to West Virginia Code § 56–3–31(c), service upon defendant's automobile liability insurance company 'shall be of the same legal force and validity as though said nonresident or his or her administrator, administratrix, executor or executrix were personally served with a Summons and Complaint within this state,' " granted Hartwell's motion for default judgment and scheduled an inquiry into Hartwell's damages. At that inquiry, the circuit court heard evidence regarding Hartwell's damages and, on July 18, 1995, entered its judgment in favor of Hartwell, and against Marquez, in the amount of $449,067.56, plus post-judgment interest.[4]

Gallant was not notified of any of the proceedings relating to the default judgment or the award of damages. After entry of the monetary judgment against Marquez, counsel for Hartwell delayed slightly more than eight months before notifying Gallant of the default and monetary judgments entered against Marquez.[5]

On May 22, 1996, Gallant filed a "MOTION TO SET ASIDE DEFAULT JUDGMENT," alleging that it did not have a contract of automobile or liability insurance with Marquez or Cecil[6] at the time it received service of process. Gallant argued that, under W. Va.Code § 56–3–31(a), a contract of insurance between the nonresident defendant and

the insurer receiving substituted service must be in effect at the time of service of process for such substituted service to be valid. In addition, Gallant contended in its motion that § 56–3–31(a) violates the due process provisions of the Fourteenth Amendment to the United States Constitution in that it asserts personal jurisdiction over a nonresident defendant based upon service of process to the defendant's automobile or liability insurer, but does not require that the insurance company notify the defendant of the pending action. By order entered October 7, 1997, the Circuit Court of Mercer County denied Gallant's motion to set aside the default judgment based upon its findings that "proper service of process was had upon the defendant and that West Virginia Code Chapter 56, Article 3, Section 31 [ (§ 56–3–31) ] is not unconstitutional." It is from this order that Gallant now appeals.

## II.

## DISCUSSION

### A. Standard of Review

In the case *sub judice*, we are asked to reverse a circuit court's decision on a motion to set aside a default judgment made pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure,[7] and to permit the case to proceed on its merits.

---

4. The applicable insurance policy was not included in the record; however, Gallant contends that its liability regarding this judgement does not exceed the policy limits of $20,000 for bodily injury and $15,000 for property damage.

5. This delay was apparently calculated to limit Gallant's options under the provisions of W. Va. R. Civ. P. 60(b), which, with limited exceptions, requires that a motion to set aside a final judgment be filed not more than eight months after the entry of the judgment order. While there are no statutory or court rule provisions prohibiting such a delay, we strongly urge practitioners to adhere to the W. Va. Standards of Professional Conduct recently adopted by this Court. Standard I.B.9 states that "[a] lawyer should not cause any default or dismissal to be entered without first notifying opposing counsel, when the identity of such counsel is known." *See also* Preamble to W. Va. Standards of Professional Conduct ("Lawyers owe to opposing counsel, the parties, the courts and the court's staff a duty of

courtesy, candor, honesty, diligence, fairness and cooperation.").

6. A sworn affidavit attached to Gallant's "MOTION TO SET ASIDE DEFAULT JUDGMENT" stated that Gallant did not currently and had never had a contract of automobile or liability insurance with "Diane Marquey (or Diane Marquez, if she is the same person as Diane Marquey)." However, Gallant acknowledged that a "Diane Marquey" had been listed as an authorized driver on the policy previously issued to Cecil. The affidavit further stated that the contract of automobile or liability insurance with Cecil terminated on January 19, 1995.

7. Rule 60(b) of the W. Va. R. Civ. P. states:

(b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or

■ We apply an abuse of discretion standard when reviewing a trial court's ruling on a motion to vacate a judgment.

> " 'A motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.' Syl. pt. 5, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974)." Syl. pt. 1, *Jackson General Hospital v. Davis,* 195 W.Va. 74, 464 S.E.2d 593 (1995).

Syl. pt. 1, *Nancy Darlene M. v. James Lee M.,* 195 W.Va. 153, 464 S.E.2d 795 (1995). However, we recognize that such discretion must be tempered by the general policy favoring the trial of all cases on their merits. We have stated, " '[a]lthough courts should not set aside default judgments or dismissals without good cause, it is the policy of the law to favor the trial of all cases on their merits.' Syl. Pt. 2, *McDaniel v. Romano,* 155 W.Va. 875, 190 S.E.2d 8 (1972)." Syl. pt. 7, *Evans v. Holt,* 193 W.Va. 578, 457 S.E.2d 515 (1995).

■ In resolving the issues raised by Gallant, we are also asked to interpret the language of W. Va.Code § 56–3–31 (1990) (Repl. Vol.1997) and to rule on the constitutionality of certain provisions contained in that code section. Our review of these issues is *de novo.* "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." ·Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

### B. Contract of Insurance at Time of Substituted Service

■ We first address Gallant's contention that W. Va.Code § 56–3–31(a) (1990) (Repl. Vol.1997)[8] requires that a contract of insurance between a nonresident motorist and his/her insurer exist at the time of substituted service upon the insurer. The relevant provisions of W. Va.Code § 56–3–31(a) provide that

> in the event process against a nonresident defendant cannot be effected through the secretary of state, as provided by this section, for the purpose only of service of process, such nonresident motorist shall be deemed to have appointed as his or her agent or attorney-in-fact any insurance company which *has* a contract of automobile or liability insurance with said nonresident defendant.

(Emphasis added). Gallant argues that the statute clearly uses the term "has" in defining the circumstances under which substituted service may be made on a nonresident motorist's insurance company, thereby dictating that the contract must exist at the time of receipt of service by the insurance company. Gallant maintains that the substituted service was ineffective in this instance because it was carried out after the contract of insurance between Gallant and Cecil had terminated. Finally, Gallant notes that sub-

proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its opera-

tion. This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

8. W. Va.Code § 56–3–31 was amended, effective July 1, 1997. However, the amendments merely changed language regarding the fee charged by the Secretary of State for executing service of process and do not affect the resolution of this case.

stituted service must be "reasonably calculated to give [the defendant] *actual notice of the proceedings and an opportunity to be heard."* *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940) (emphasis added). Absent a current contract of insurance, Gallant contends, substituted service on an insurer is not reasonably calculated to give a defendant "actual notice of the proceedings and an opportunity to be heard."

We have previously held that:

Code, 56–3–31, as amended, is in derogation of common law in allowing a summons to be served upon the Auditor in an action against a non-resident defendant and therefore must be strictly adhered to in accordance with its clear and unambiguous terms.

Syl. pt. 2, *Stevens v. Saunders,* 159 W.Va. 179, 220 S.E.2d 887 (1975). We find that the clear and unambiguous terms of W. Va.Code § 56–3–31(a) refer to substituted service upon the insurance company engaged in a contract of insurance with a nonresident motorist at the time of an alleged accident.

Gallant urges us to focus on the single word "has" in order to interpret § 56–3–31(a) as requiring that a contract of insurance between the insurer receiving substituted service and the nonresident motorist exist at the time of service of process. When considering § 56–3–31(a) in its entirety, we believe it is clear that the legislature is referring to the circumstances in existence at the time a nonresident motorist exercised the privilege of operating a motor vehicle on the public roadways of this state. We recognize that "[a] common maxim of statutory construction is that statutes are to be construed so as to give meaning to every word in them." *State v. Miller,* 197 W.Va. 588, 600, 476 S.E.2d 535, 547 (1996) (citation omitted). However, another commonly applied rule of statutory construction is that " '[i]n the construction of

a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety.' Syl. pt. 1, *Parkins v. Londeree,* 146 W.Va. 1051, 124 S.E.2d 471 (1962)." Syl. pt. 3, *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990). Moreover, we have noted that "[i]t is well-established that '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 123 n. 5, 468 S.E.2d 733, 738 n. 5 (1996) (citations omitted).

Common sense also dictates the result we reach today. The insurance company that has a contract of insurance with a nonresident driver at the time such driver, or his or her vehicle under the appropriate circumstances, is involved in an accident in this state is the insurer who will likely have a duty to defend the nonresident driver with regard to any legal action resulting from the accident. *See* 7C John Alan Appleman, *Insurance Law and Practice* § 4682 (Berdal ed.1979). *Cf.* W. Va.Code § 33–6–21 (1957) (Repl.Vol.1996) (proscribing retroactive annulment of insurance policy after the occurrence of an incident for which the insured may incur liability, impliedly binding insurer as of the date of the accident).

Moreover, police reports of an accident contain the name and address of the insurance company providing coverage at the time of the accident. A plaintiff would conceivably have a difficult time identifying the subsequent insurer of a defendant who cannot be located. We are also persuaded by Hartwell's argument that W. Va.Code § 56–3–31(c) [9] (1990) (Repl.Vol.1997) would be nonsensical if the insurance company referred to

---

**9.** W. Va.Code § 56–3–31(c) (1990) (Repl.Vol. 1997) states:

A nonresident operating a motor vehicle in this state, either personally or through an agent, is deemed to acknowledge the appointment of the secretary of state, or, as the case may be, *his or her automobile insurance company,* as his or her agent or attorney-in-fact, ... and

furthermore is deemed to agree that any process against him or her ..., which is served in the manner herein provided, shall be of the same legal force and validity as though said nonresident ... were personally served with a summons and complaint within this state.

(Emphasis added).

therein was intended to be the insurance company engaged in a contract of insurance with the defendant at the time of service of process. Under Gallant's interpretation, a nonresident motorist operating a vehicle in this state would be deemed to have appointed some unknown insurance company that might provide insurance in the future, and with whom no contract of insurance existed at the time of the accident. We cannot approve such a strained construction of the statute. Consequently, we hold that the provisions of W. Va.Code § 56–3–31 (1990) (Repl.Vol.1997) permitting substituted service upon a nonresident motorist's insurer refer to an insurer providing coverage at the time of an accident alleged in a complaint.

### C. Constitutionality of W. Va.Code § 56–3–31

Gallant next submits that substituted service, in order to comport with due process, must be "reasonably calculated to give [the defendant] actual notice of the proceedings and an opportunity to he heard." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940). Gallant argues that this Court should conclude that W. Va.Code § 56–3–31 does not comport with due process if it is interpreted to permit or is permitted to be used where the insurance company has no contract of insurance with the nonresident motorist at the time of substituted service of process.[10]

Gallant notes that the United States Supreme Court has concluded that a default judgment was invalid in a case where service of process was made pursuant to a New Jersey nonresident motorist statute that permitted the Secretary of State to receive process, but failed to provide for communication to the proposed defendant reasonably calculated to apprise the defendant of the action against him or her. *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928). The *Wuchter* Court stated:

[T]he enforced acceptance of the service of process on a state officer by the defendant would not be fair or due process unless such officer or the plaintiff is *required* to mail the notice to the defendant, or to advise him, by some written communication, so as to make it reasonably probable that he will receive actual notice. Otherwise, where the service of summons is limited to a service on the Secretary of State or some officer of the state, without more, it will be entirely possible for a person injured to sue any non-resident he chooses, and through service upon the state official obtain a default judgment against a non-resident who has never been in the state, who had nothing to do with the accident, or whose automobile having been in the state has never injured anybody. A provision of law for service that leaves open such a clear opportunity for the commission of fraud ... or injustice is not a reasonable provision, and in the case supposed would certainly be depriving a defendant of his property without due process of law.

*Id.* at 19, 48 S.Ct. at 260–61, 72 L.Ed. at 449 (emphasis added) (citation omitted). The *Wuchter* Court further concluded that "[e]very statute of this kind ... should impose either on the plaintiff himself or upon the official receiving service or some other, the duty of communicating by mail or otherwise with the defendant." 276 U.S. at 20, 48 S.Ct. at 261, 72 L.Ed. at 450.

*Wuchter v. Pizzutti* is not dispositive of the issue before us. The statute addressed in *Wuchter* contained *no* provision for notifying a defendant of an action against him or her. Our statute providing for service of process on nonresident motorists, on the other hand, contains very specific provisions for notifying a defendant of such an action. Upon receiving service as the appointed attorney-in-fact for the nonresident driver, the Secretary of State is required to forward to the defendant

---

**10.** Gallant also contends that W. Va.Code § 56–3–31 violates principles of due process because it does not expressly compel the insurance company to forward a copy of the process to the nonresident motorist. We note, however, that this state has no authority to compel a corporation located in another state, and possibly having no contact with West Virginia, to serve notice on a nonresident motorist. Moreover, as explained below, W. Va.Code § 56–3–31 requires that the Secretary of State forward notice of a pending action to the nonresident defendant, thus reasonably providing for notice to the defendant.

notice of service and a copy of the summons and complaint by registered or certified mail with a return receipt requested. W. Va.Code § 56–3–31(e). We have previously determined that this procedure complies with the due process requirements outlined in *Wuchter*. *Crawford v. Carson*, 138 W.Va. 852, 855, 78 S.E.2d 268, 271 (1953).[11]

■ Substituted service of process upon a nonresident defendant through the defendant's insurance company may be made *only after* compliance with these procedures, provided that the registered or certified mail sent by the Secretary of State is refused or unclaimed by the addressee or if the addressee has moved without any forwarding address. *See* W. Va.Code § 56–3–31(g). If these conditions are not met, substituted service on an insurer is not adequate. To assure that these provisions are honored, a plaintiff must file with the clerk of the circuit court an affidavit alleging that such procedures were followed and that the Secretary of State complied with the provisions of W. Va.Code § 56–3–31(e). W. Va.Code § 56–3–31(g). We believe that this procedure is reasonably calculated to provide a defendant with notice and an opportunity to defend the action. Therefore, W. Va.Code § 56–3–31, comports with the due process requirements of the Fourteenth Amendment to the United States Constitution.

■ We reject Gallant's argument that substituted service on an insurance company is only likely to provide notice to a defendant when a contract of insurance exists at the time of service. The insurance company providing coverage at the time of the accident is likely to have a duty to defend any resulting action, and thus, a motive to locate the defendant. Moreover, as explained above, the procedures for notifying the defendant by registered or certified mail *must be complied with prior to attempting substituted service on an insurer*. Additionally, it is important to recognize that due process does not require that the method of service absolutely provide a defendant with notice. It is sufficient if it is reasonably calculated to provide such notice. The United States Supreme Court has acknowledged that "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 658, 94 L.Ed. 865, 875 (1950) (citations omitted).

While we have found no other statutes containing provisions for substituted service on insurers of nonresident motorists, other courts have approved such service when authorized by court order. The Court of Appeals of New York addressed the issue of substituted service on the liability insurer of a defendant whose whereabouts were unknown in *Dobkin v. Chapman*, 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451 (1968). The court observed that "[i]ncreasingly in modern jurisprudence, [due process] has come to represent a realistic and reasonable evaluation of the respective interests of plaintiffs, defendants and the state under the circumstances of the particular case." *Id.* at 502, 289 N.Y.S.2d at 170, 236 N.E.2d at 457–58 (citations omitted). The *Dobkin* court opined that "[u]ndeniably, there are situations in which insistence on actual notice, or even on the high probability of actual notice, would be both unfair to plaintiffs and harmful to the public interest." *Id.* at 503, 289 N.Y.S.2d at 172, 236 N.E.2d at 458 (citation omitted).

In approving the method of substituted service on a defendant's liability insurer, the court briefly analyzed "the plaintiff's need, the public interest, the reasonableness of the plaintiff's efforts under all the circumstances to inform the defendant, and the availability of other safeguards for the defendant's interests," and concluded that such service was appropriate and did not violate due process. *Id.*

11. We have also determined that when a return receipt is noted "unknown" or "insufficient address," and no other action has been taken pursuant to the statutory provisions for service, then service of process has not complied with the statutory requirements and will not support a default judgment. Syl. pt. 4, *Mollohan v. North Side Cheese Co.*, 144 W.Va. 215, 107 S.E.2d 372 (1959); Syl. pt. 2, *Evans v. Holt*, 193 W.Va. 578, 457 S.E.2d 515 (1995).

Addressing the plaintiff's need for substituted service, the *Dobkin* court noted that "the Supreme Court has observed, 'The potentialities of damage by a motorist, in a population as mobile as ours' are so widespread 'that those whom [a motorist] injures must have opportunities of redress against [such motorist] provided only that [the motorist] is afforded an opportunity to defend [him or herself].' (*Olberding v. Illinois Cent. R.R. Co.,* 346 U.S. 338, 341, [74 S.Ct. 83, 85, 98 L.Ed. 39, 43] (1953))." *Id.* at 503, 289 N.Y.S.2d 161, 236 N.E.2d 451, 289 N.Y.S.2d at 172, 236 N.E.2d at 459. We believe this need is universal.

The second factor is public interest. This state's interest in the just compensation of its citizens for injuries received in motor vehicle accidents is evidenced by the requirement that all insurance policies issued or delivered in this state provide uninsured motorist coverage and an option for underinsured motorist coverage. W. Va.Code § 33–6–31(b) (1995) (Repl.Vol.1996). *See State Farm Mut. Auto. Ins. Co. v. Norman,* 191 W.Va. 498, 506, 446 S.E.2d 720, 728 (1994) (" 'The primary, if not sole purpose of mandatory uninsured motorist coverage is to protect innocent victims from the hardships caused by negligent, financially irresponsible drivers.' " (quoting *Lusk v. Doe,* 175 W.Va. 775, 779, 338 S.E.2d 375, 380 (1985))).

The third factor addressed by the *Dobkin* court was the reasonableness of the plaintiff's efforts to inform the defendant. As previously discussed, W. Va.Code § 56–3–31 provides for serving nonresident motorist defendants through the Secretary of State and requires that the Secretary provide notice to the defendant by registered or certified mail with a return receipt requested. If the return receipt is noted "refused," "unclaimed," or "moved without forwarding address," then service on the insurance company is appropriate. Plaintiff followed this procedure, which we have found meets the due process requirements of *Wuchter v. Pizzutti. See Crawford v. Carson,* 138 W.Va. 852, 855, 78 S.E.2d 268, 271 (1953). If the defendant had

provided a proper address, or notified the postal service of any change in address, she would have received personal service.[12] We concur with the observations of the *Dobkin* court:

> These lawsuits [do] not appear out of the blue; they are the consequence of serious accidents in which the defendants knew that [another] had been injured.... Anyone who drives a car knows that, after such an occurrence, he [or she] is likely to be served as a defendant.
>
> . . . .
>
> Due process does not require that defendants derive any advantage from the sedulous avoidance of any of these measures. Indeed, in an automobile case, no defendant need be without notice unless he chooses and wants to be; many an injured plaintiff, however, will go without recompense if, in a proper case, the standards of informative notice may not be relaxed.

*Dobkin* at 504, 289 N.Y.S.2d at 172–73, 236 N.E.2d at 459.

With regard to the final factor, the availability of other safeguards for the defendant's interests, we reiterate that the insurer is the true party in interest who owes to the insured defendant a duty to defend. *See* 7C John Alan Appleman, *Insurance Law and Practice* § 4682 (Berdal ed.1979) (explaining that an insurer's right to control the defense of an action against the insured is necessarily accompanied by a duty to defend). Moreover, because the insurer must pay the judgment of a successful action arising from a covered accident, at least within the policy limits, the insurer will typically have the same interest in successfully defending the claim as would the defendant.

The Supreme Court of New Jersey has also applied the four factors set forth in *Dobkin* and approved service of process on an insurer where notice is sent to the insured defendant at his or her last known address. *Feuchtbaum v. Constantini,* 59 N.J. 167, 280 A.2d 161 (1971). *Feuchtbaum* addressed three separate cases where the defendant was a resident of the state at the time of the

---

**12.** Little more than three months passed between the accident and the attempted service on Marquez.

accident, but could not be found when the plaintiff attempted service of process. The *Feuchtbaum* court commented that "[i]t is unjust to deny relief to plaintiff because the alleged wrongdoer disappeared." *Id.* at 177, 280 A.2d at 166.

Finally, we note that in *Krueger v. Williams,* 410 Mich. 144, 300 N.W.2d 910 (1981), the Supreme Court of Michigan sanctioned the results reached in *Dobkin* and *Feuchtbaum,* and concluded that substituted service upon a defendant's liability insurer did not violate due process. The *Krueger* court commented that "[o]ur mobile society affords elusive defendants the potential to escape liability by avoiding service of process." *Krueger* at 164, 300 N.W.2d at 917.

For the above stated reasons, we hold that the provisions of W. Va.Code § 56–3–31 (1990) (Repl.Vol.1997) that permit substituted service of process on a nonresident motorist's liability insurer after all statutory conditions are met is constitutional and does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In addition, we note that Gallant's liability to Hartwell with respect to the judgment against Marquez does not exceed the policy limits [13] contained in the applicable contract of insurance.[14]

### D. Plaintiff's Failure to Notify Insurer or Insurer's Counsel

Lastly, we address Gallant's argument that counsel for Hartwell failed to provide proper notice, pursuant to Rule 55(b)(2) of the W.

Va. Rules of Civil Procedure,[15] of his motion for a default judgment and of the inquiry into Hartwell's damages. Gallant did not raise this issue below. "It is a well established principle that this Court will not decide nonjurisdictional questions which have not been raised in the court below. *West Virginia Department of Highways v. Delta Concrete Co.,* [165] W.Va. [398], 268 S.E.2d 124 (1980); *Dixon v. American Indus. Leasing Co.,* 157 W.Va. 735, 205 S.E.2d 4 (1974); *Shaw v. Shaw,* 155 W.Va. 712, 187 S.E.2d 124 (1972)." *Stonebraker v. Zinn,* 169 W.Va. 259, 266, 286 S.E.2d 911, 915 (1982).

■ While Gallant concedes that it did not complain of the lack of notice below, it argues that the issue is, nevertheless, properly before this court. In support of this contention, Gallant cites syllabus point 1 of *Stephenson v. Ashburn,* 137 W.Va. 141, 70 S.E.2d 585 (1952), which states:

Where a defendant *appears* and demands a trial by jury, in a case wherein he is entitled to a jury, and such a trial is not later waived, a judgment entered against him by default is void, *and may be attacked at any time, directly or collaterally.*

(Emphasis added). *Stephenson* merely applies the general rule that a void judgment may be attacked at any time, directly or collaterally. *See, e.g.,* Syl. pt. 3, *State ex rel. Vance v. Arthur,* 142 W.Va. 737, 98 S.E.2d 418 (1957) ("A void judgment, being a nullity, may be attacked, collaterally or directly, at any time and in any court whenever any

---

13. *See supra* note 4.

14. In this opinion, we limit our discussion to the claims heretofore asserted against Gallant.

15. Rule 55(b)(2) of the W. Va. Rules of Civil Procedure states:

(b) *Entry.*—When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered as follows:

(2) Other Cases.—In all other cases the party entitled to a judgment by default shall apply to the court therefor and shall file with the court an affidavit showing the other party's failure to appear or otherwise defend; but no judgment by

default shall be entered against an infant, incompetent person, or incarcerated convict unless represented in the action by a guardian, guardian ad litem, committee, curator or other representative who has appeared therein. *If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary.
(Emphasis added).

claim or right is asserted under such judgment."), *overruled in part by Stalnaker v. Roberts,* 168 W.Va. 593, 599–600, 287 S.E.2d 166, 169 (1981); [16] Syl. pt. 4, *Rakes v. Ferguson,* 147 W.Va. 660, 130 S.E.2d 102 (1963) (same). Thus, because this issue was not raised below, Gallant is entitled to raise it only if the judgment is void.

It is widely recognized that "[a] failure to give the three days' notice when it is required generally is considered a serious procedural error that justifies the reversal or the setting aside of a default judgment. The judgment, however, usually is not considered void or subject to collateral attack." 10 Charles A. Wright et al., *Federal Practice and Procedure,* Civil 2d § 2687, p. 438–40 (1983) (footnotes omitted).[17] Stated another way, default judgments entered without notice are *voidable,* but are not *void.* Consequently, we hold that the failure to provide a party against whom judgment of default is sought with notice of the application for judgment as required by Rule 55(b)(2) of the W.

Va. Rules of Civil Procedure renders the subsequent default judgement *voidable,* but such judgement is not *void.* Accordingly, the issue of lack of notice is not properly raised on appeal unless it was first raised below.[18] Because Gallant failed to challenge the lack of notice before the circuit court it has waived this issue. We will not address it on appeal.

## III.

### CONCLUSION

For the foregoing reasons, we find that the circuit court did not abuse its discretion in denying Gallant's motion to set aside the default judgment entered against Marquez. Therefore, the October 7, 1997, order of the Circuit Court of Mercer County is affirmed.

Affirmed.

16. In *Stalnaker v. Roberts,* we explained that:

we do not overrule *Vance v. Arthur,* [142 W.Va. 737, 98 S.E.2d 418 (1957),] ... with regard to our holding that a constitutionally infirm, and therefore void judgment, may be collaterally attacked. We overrule *Vance* ... only to the extent that [it] permit[s] the forum for that attack to be the Circuit Court of Kanawha County when the original judgment was not rendered in Kanawha County....

Void judgments may still be attacked; however, they must be attacked in the county in West Virginia in which they were rendered if they are West Virginia judgments and in the court system of the state where they were originally rendered if they are out-of-state judgments.

168 W.Va. 593, 599–600, 287 S.E.2d 166, 169 (1981).

17. *See also Winfield Assocs., Inc. v. Stonecipher,* 429 F.2d 1087, 1091 (10th Cir.1970) (recognizing that notice under Rule 55(b)(2) is procedural, and thus, failure to serve notice "should not usually be treated as so serious as to render the judgment void"); *Collex, Inc. v. Walsh,* 74 F.R.D. 443, 448 (E.D.Pa.1977) (adopting view of *Winfield v. Stonecipher,* and commenting that "failure to follow the notice procedures of Rule 55(b)(2) does not [necessarily] require vacation of the judgment as a matter of law"); *United States v. Martin,* 395 F.Supp. 954, 960 (S.D.N.Y. 1975) (observing that "failure to give notice of the application for and the entry of the default judgment is a procedural rather than a jurisdictional defect which does not necessarily render the judgment void"); *United States v. Manos,* 56

F.R.D. 655, 658 (S.D.Ohio 1972) (stating "[i]t is well established that protections contained in Rule 55, Fed.R.Civ.P. are essentially procedural and the failure to abide by them does not necessarily render a resultant judgment void"); *Matter of Marriage of Thompson,* 17 Kan.App.2d 47, 55, 832 P.2d 349, 355 (1992) (following rule that "[f]ailure to give the three days' notice justifies the setting aside of the default judgment[,] ... [but] the default judgment entered without such notice is not void" (citations omitted)); 10 James Wm. Moore, et al., *Moore's Federal Practice* § 55.21[2][d] (3d ed. 1997) ("Where a nondefaulting party has moved for entry of a default judgment, failure to give notice as required by Rule 55(b)(2) is a serious procedural error, but does not necessarily provide grounds for vacatur of the default judgment. Rather, courts examine the circumstances on a case-by-case basis to determine whether the failure to give notice will require that the default judgment be set aside.").

18. While we believe we have adopted the better rule, we recognize that some courts have held otherwise. *See, e.g., Bass v. Hoagland,* 172 F.2d 205, 210 (5th Cir.1949) (concluding that default judgment was void on due process grounds where defendant filed an answer, but did not receive notice of the plaintiff's motion for default judgment); *Ken–Mar Airpark Inc. v. Toth Aircraft & Accessories Co.,* 12 F.R.D. 399, 400 (W.D.Mo. 1952) (finding judgment was void on due process grounds where defendant did not receive notice of the plaintiff's application for default judgment).