No. 17-1106 - <u>Samuel L. Amoruso, Jr. d/b/a Quality Supplier  Trucking, Inc. v. Commerce and Industry Insurance Company</u>

**FILED**

**March 27, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WORKMAN, Justice, dissenting:

This Court "'may, sua sponte, in the interest of justice, notice plain error.' Syl. Pt. 1, in part, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998)." Syl. Pt. 1, *Cartwright v. McComas*, 223 W.Va. 161, 672 S.E.2d 297 (2008). The criteria for invoking the plain error doctrine are straightforward: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Accordingly, although plain error was not raised by the petitioner, Samuel Amoruso, Jr.,[1] the facts and procedural history, as outlined below, demand its application in this instance. Indeed, it is the interest of justice and the duty of candor toward our courts that compel me to dissent in this matter.

The respondent, Commerce and Industry Insurance Company, issued a workers' compensation insurance policy to Q.S.I., Inc.[2] On January 22, 2013, the respondent

---

[1] It is unclear whether Mr. Amoruso's middle initial is "R." or "L." In the complaint filed in the circuit court, the respondent used the middle initial "R." In the parties' briefs filed in this Court, they both use the initial "L."

[2] A document contained in the appendix record reflects that Mr. Amoruso was the
(continued...)

1

sent a "Legal Collections Notice" addressed to Q.S.I., Inc., demanding payment in the amount of $36,809 for a final audit premium. Presumably, Q.S.I., Inc. did not remit the premium payment because the respondent instituted a civil action in the circuit court seeking to recover that sum. Rather than suing Q.S.I., Inc., however, the respondent named "Samuel R. Amoruso, Jr. dba Quality Supplier Trucking, Inc." as the defendant and sought a judgment against him personally in the amount of $36,809.[3]

Mr. Amoruso, acting pro se, filed an answer in which he denied all allegations against him in the complaint, including the allegation that he personally owed any money to the respondent. In addition, he repeatedly communicated with the respondent and its counsel through which he advised that he was not the entity to be charged. Later, while still acting pro se, Mr. Amoruso answered the respondent's written discovery requests in which he again

---

[2](...continued)
vice-president and treasurer of Q.S.I., Inc.

[3] A person or company may not conduct business in West Virginia under an assumed name until the person or company files a "doing business as" trade registration. *See* W.Va. Code § 47-8-2 (2015 & Supp. 2018). A search of the West Virginia Secretary of State's website reveals the corporate registration for Quality Supplier Trucking, Inc., which lists "Samuel R. Amoruso, Jr." as an officer and a director. *See* W.Va. R. Evid. 201, in part ("The court may judicially notice a fact that is not subject to reasonable dispute because it: . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). This same corporate registration also shows "No Records Found" for "DBAs[.]" Consequently, absent Mr. Amoruso registering as a "d/b/a," there is no legal basis for the respondent to have named him as "dba Quality Supplier Trucking, Inc." in this action, even assuming, *arguendo*, that Quality Supplier Trucking, Inc.–not Q.S.I., Inc.–was the corporate entity that allegedly owed a debt to the respondent.

2

denied owing any money to the respondent and again tried to advance that the respondent had sued the wrong entity. Thereafter, the respondent filed an amended complaint in this same action, now claiming that Mr. Amoruso personally owed $64,255 in unpaid premiums.

When Mr. Amoruso did not file an answer to the amended complaint, the respondent represents that it filed a motion for default judgment against Mr. Amoruso in the circuit court. Interestingly, the copy of this motion in the appendix record is not stamped as having ever been filed in the circuit court, and it does not appear on the circuit court's docketing sheet, which lists all pleadings, documents, letters, etc., filed in the action.[4] Setting aside the question of whether the motion was actually filed, there is no indication that Mr. Amoruso was ever served with a copy of this motion. There is certainly no certificate of service attached to the copy of the motion in the appendix record.[5] Further, Mr. Amoruso was not copied on the respondent's January 16, 2016, cover letter to the circuit court clerk enclosing the motion for filing, although the circuit court judge was copied on the letter. The problems do not end here.

---

[4] A copy of the circuit court's docketing sheet is included in the appendix record.

[5] As discussed, *infra*, Mr. Amoruso was entitled to notice of this motion under West Virginia Rule of Civil Procedure 55(b)(2). *See also* Syl., in part, *Daniels v. Hall's Motor Transit Co.*, 157 W.Va. 863, 205 S.E.2d 412 (1974) (finding that party who has indicated interest in pending litigation "'has appeared' within the contemplation of Rule 55(b)(2), R.C.P. and is entitled to notice of an application for default judgment.").

3

In the "Affidavit of Indebtedness" attached to the respondent's motion for default judgment, the respondent's affiant avers that $64,255 is "due to National Union"—not to the respondent. Consequently, even assuming the motion for default judgment and its supporting affidavits were filed in the circuit court, the only evidence was that the alleged debt was owed to "National Union," which is not a named party in this action. Perhaps more troubling is the "Affidavit for Entry of Default Judgment" signed by the respondent's counsel. In his affidavit, counsel states that Mr. Amoruso had "wholly failed to appear, plead or otherwise defend in this action[.]"[6] As is readily evident from the procedural history summarized above, this statement was plainly false and served to mislead the circuit court.[7]

Notwithstanding these serious problems, the respondent's proposed order granting the motion and awarding a default judgment against Mr. Amoruso in the amount of $64,255 was signed by the circuit court judge on January 16, 2018, the date of the respondent's cover letter. This order was later filed in the circuit court's clerk's office on January 28, 2016. The circuit court's docketing sheet reflects that an abstract of the default

---

[6] Although Mr. Amoruso did not file an answer to the amended complaint, an amended complaint is not a new action. This case is one action, and both the complaint and the amended complaint bear the same civil action number.

[7] The Preamble to the West Virginia Standards of Professional Conduct provides that "[l]awyers owe to opposing counsel, the parties, the courts and the court's staff a duty of courtesy, candor, honesty, diligence, fairness and cooperation."

4

judgment order was mailed to the respondent's counsel on March 10, 2016, at counsel's request. There is no indication that a copy of the order was ever mailed to Mr. Amoruso.

From the parties' briefing and the appendix record, it appears that Mr. Amoruso first learned that a default judgment had been entered against him when the respondent began its efforts to collect upon the judgment by serving a "Suggestion of Personal Property" upon Mr. Amoruso and the bank that held his accounts in May 2017, approximately fifteen months after entry of that judgment. Mr. Amoruso immediately retained counsel who, just two days later, filed a motion to set aside the default judgment under West Virginia Rule of Civil Procedure 60(b).[8] Because more than a year had passed since entry of the default judgment before Mr. Amoruso learned of it, many of the bases for seeking to set aside a judgment under West Virginia Rule of Civil Procedure 60(b) were already untimely under that rule. It is of great concern that the respondent may have purposely delayed executing upon its dubious judgment solely to restrict Mr. Amoruso's

---

[8] *See* W.Va. R. Civ. P. 60(b), in part ("On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; . . . (3) fraud . . . , misrepresentation, or other misconduct of an adverse party . . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken").

avenues of relief, all the while its judgment accrued interest at the rate of seven percent per annum.[9]

The respondent is not the first party to gain an unfair advantage through its seemingly purposeful delay. In *Hartwell v. Marquez*, 201 W.Va. 433, 498 S.E.2d 1 (1997), this Court addressed counsel's more than eight-month delay in notifying an insurance carrier that default and monetary judgments had been entered against it. As this Court appropriately observed,

> [t]his delay was apparently calculated to limit Gallant's options under the provisions of W.Va. R. Civ. P. 60(b), which, with limited exceptions, requires that a motion to set aside a final judgment be filed not more than eight months after the entry of the judgment order.[10] While there are no statutory or court rule provisions prohibiting such a delay, we strongly urge practitioners to adhere to the W. Va. Standards of Professional Conduct recently adopted by this Court. Standard I.B.9 states that "[a] lawyer should not cause any default or dismissal to be entered without first notifying opposing counsel, when the identity of such counsel is known."[11]

*Hartwell*, 201 W.Va. at 436 n.5, 498 S.E.2d at 4 n.5 (footnotes added). Although Mr. Amoruso's newly retained counsel did not cite the specific subsections of Rule 60(b) under

---

[9] By the time the respondent began its efforts to execute upon its $64,255 judgment, the amount owed was $69,972.

[10] Rule 60(b) was subsequently amended to provide for the one-year-time period. *See supra* note 8.

[11] While Mr. Amoruso was self-represented at this juncture, his identity and location were known to the respondent's counsel, who could have provided him with notice.

6

which relief was being sought, his arguments suggested that he was seeking relief under the provisions that would invoke the one-year-time limitation under Rule 60(b).[12]  Because the Rule 60(b) motion was filed more than one year after the default judgment was entered, the circuit court denied the motion on the basis that it was untimely filed.  *See* W.Va. R. Civ. P. 60(b), in part (providing that motions seeking relief under Rule 60(b)(1) and (3) must be filed "not more than one year after the judgment . . . was entered[.]").

Regardless of the particular provisions that were relied upon in Mr. Amoruso's Rule 60(b) motion, there is no question that he was entitled to written notice that a motion for default judgment had been filed given his appearance and defense in the action.  In fact, West Virginia Rule of Civil Procedure 55(b)(2) expressly provides that "[i]f the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."

We addressed the Rule 55(b)(2) notice requirement in *Daniels v. Hall's Motor Transit Co.*, 157 W.Va. 863, 205 S.E.2d 412 (1974), which involved a circuit court's denial

---

[12]  It was asserted that the respondent either knew or should have known the proper entity to sue was Q.S.I., Inc. and, therefore, the respondent had misrepresented salient facts and perpetrated a fraud upon the circuit court, which would be Rule 60(b)(3), and that excusable neglect and unavoidable cause applied to the timing of the motion to set aside, which would be Rule 60(b)(1).  *See supra* note 8.

of a motion to set aside a default judgment. The parties had entered into a stipulation,

extending the time by which the defendants had to answer the complaint. When the

defendants failed to file an answer within that stipulated time frame, the plaintiffs filed a

motion for a default judgment but failed to provide notice of their motion to the defendants.

Absent such notice and an opportunity to object, a default judgment was entered against the

defendants in the precise amounts pled in the complaint. The circuit court denied the

defendants' motion to set aside the default judgment, and the defendants appealed. In

reversing the circuit court, this Court held that

> [w]here a party defendant files a written stipulation extending the time for filing an answer, or indicates interest in pending litigation against him by any other written matter of record in the court file signed by the party, his counsel, or his representative, the party 'has appeared' within the contemplation of Rule 55(b)(2), R.C.P. and is entitled to notice of an application for default judgment.

*Daniels,* 157 W.Va. at 863, 205 S.E.2d at 412, syllabus;[13] *see also* Syllabus, *Godbey v.*

*Lanham,* 191 W.Va. 233, 445 S.E.2d 174 (1994) ("Where a defendant has answered a

plaintiff's complaint, a default judgment under Rule 55(b)(2) of the Rules of Civil Procedure

may not be obtained unless the defendant shall have been served with written notice of the

---

[13] There is no indication in *Daniels* that a hearing was held before entry of the default judgment. Thus, it does not appear that this Court has restricted the notice requirement in Rule 55(b)(2) to only those matters where a hearing must be held on unliquidated damages. Regardless, a hearing was warranted in the instant matter where (1) the respondent claimed the damages were liquidated; (2) Mr. Amoruso contested the amount of the alleged damages; and (3) the respondent's affiant averred that the "liquidated" damages were owed not to it, but to "National Union[,]" a non-party.

8

application for judgment at least three days prior to the hearing on such application."). As this Court aptly and succinctly explained in *Daniels*, "[t]he purpose of this Rule [55(b)(2)]is to provide a party defendant with a timely opportunity to urge reasons against entry of default judgment." *Daniels,* 157 W.Va. at 865, 205 S.E.2d at 413. In addition,

> [a] motion for judgment by default against the party who has . . . appeared in the action but has not been served with written notice of the application for such judgment at least three days prior to the hearing as provided by Rule 55(b)(2) of the Rules of Civil Procedure should not be granted or such judgment entered by the court in the absence of service of such notice; and a judgment by default so entered by the court is erroneous and will be set aside upon appeal.

Syl. Pt. 3, in part, *Investors Loan Corp. v. Long*, 152 W.Va. 673, 166 S.E.2d 113 (1969). Because Mr. Amoruso did not learn of the default judgment until the respondent began executing upon it some fifteen months after it was entered, he was foreclosed from seeking relief through an appeal since the time for filing the same had long passed,[14] just as the time period may have passed for seeking relief under Rule 60(b)(1) and (3).

Once the circuit court was reminded during the hearing held on the motion to set aside the default judgment of Mr. Amoruso's appearance and defense in the action, the circuit court should have recognized its error in having entered an order awarding a default judgment on the basis that Mr. Amoruso had "failed to appear, plead or otherwise defend this

---

[14] *See* W.Va. R.A.P. 5; W.Va. Code § 58-5-4.

9

action." Further, because Mr. Amoruso was never provided with the requisite Rule 55(b)(2) notice of the respondent's motion for default judgment, he had no opportunity "to urge reasons against entry of default judgment." *Daniels,* 157 W.Va. at 865, 205 S.E.2d at 413. Inasmuch as the circuit court signed the order granting the default judgment on the same date that appears on the respondent's cover letter enclosing the motion, the court would have known that Mr. Amoruso did not have an opportunity to be heard. Perhaps the circuit court was blinded to this error given its preconceived opinion of Mr. Amoruso, which was revealed during the motion hearing when the circuit court stated: "what's out of line is your client [Mr. Amoruso] has spent his whole entire career creating these damn companies so he can hide behind money that he owes people." The circuit court would have been better served had it followed the long-standing principle that "[i]f any doubt exists as to whether relief should be granted, such doubt should be resolved in favor of setting aside the default judgment in order that the case may be heard on the merits." *McDaniel v. Romano*, 155 W.Va. 875, 878, 190 S.E.2d 8, 11 (1972).

Although the majority contends that Mr. Amoruso has waived this notice issue by not raising it below, "the raise or waive rule is not absolute." *State v. LaRock,* 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) (citation omitted). Thus, a court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved. "To affect substantial rights means the error was prejudicial. It must have

10

affected the outcome of the proceedings in the circuit court[.]" *Miller*, 194 W.Va. at 7, 459 S.E.2d at 118, syl. pt. 9, in part. Indisputably, this is precisely what happened here.[15]

Mr. Amoruso was clearly deprived of his substantial right to notice under Rule 55(b)(2), which resulted in a personal judgment against him in excess of $64,000 through the false representation that he had "wholly failed to appear, plead, or otherwise defend in this action." I am also troubled by the respondent's inability to explain why it instituted this action against Mr. Amoruso, personally, rather than the corporation with whom it had contracted, Q.S.I., Inc. This was an issue repeatedly raised by Mr. Amoruso below. When this Court sought an explanation in this regard during oral argument, the respondent's counsel evaded answering the question and, instead, cited the scope of appellate review.[16] Lastly, I question the circuit court's entry of the default judgment when the respondent's affidavit filed in support of the motion indicated that the alleged debt was owed to "National Union," a non-party. In short, had Mr. Amoruso been provided with notice, he would have

---

[15] I agree with the reasoning of Justice Hutchison in his dissenting opinion in this matter. It is clear that under the facts and circumstances of this case, the failure to provide Mr. Amoruso with the requisite notice under Rule 55(b)(2) denied him an opportunity to be heard, which is the essence of due process. Unquestionably, "[t]he most fundamental due process protections are notice and an opportunity to be heard." *State ex rel. Bd. of Educ. of Cty. of Putnam v. Beane,* 224 W.Va. 31, 35, 680 S.E.2d 46, 50 (2009).

[16] Absent any explanation being offered, perhaps the respondent instituted this action as it did to facilitate reaching Mr. Amoruso's personal assets. Had the respondent sued Q.S.I., Inc., it could not have reached Mr. Amoruso's personal assets without first meeting the legal strictures for piercing Q.S.I., Inc.'s corporate veil.

been afforded the opportunity to argue against the entry of default judgment on these and/or other bases, all of which warranted relief under Rule 60(b).

Based on the above, I firmly believe that the combination of these plain errors and obstreperous misrepresentations has seriously the fairness of the judicial process and Mr. Amoruso's substantial rights in this action. For these reasons, I respectfully dissent to the decision reached by the majority of the Court in this matter.