Wesley A. BROWN, Jr., Appellant,

v.

Robert LANGE, and John Willis, Jr., Appellees.

No. S–8745.

Supreme Court of Alaska.

April 27, 2001.

---

Michael L. Lessmeier, Lessmeier & Winters, Juneau, for appellant.

Mark Clayton Choate, Choate, Guinn & Springmeyer, San Diego, CA, for appellee Robert Lange.

No appearance for appellee John Willis, Jr.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Wesley Brown, a formerly *pro se* defendant, appeals the superior court's denial of his motion to set aside a default judgment against him in a personal injury case. Brown asserts that he was entitled to notice before the entry of the default, that he was entitled to notice before the entry of the default judgment, and that plaintiff Robert Lange's attorney was obliged both to inquire about Brown's intentions and to notify the court of Brown's attempt to contact him before seeking the default. In these matters of first impression, we disagree with Brown: The default was validly entered and Lange's attorney owed Brown no independent professional duty to give him notice. But because the default judgment was entered without apportioning fault between two defendants, we must vacate the default judgment and remand to the superior court for further proceedings.

## II. FACTS AND PROCEEDINGS

John Willis's boat struck Wesley Brown's boat near Kake on May 7, 1995, injuring Brown and Willis's passenger, Robert Lange. All three men had been drinking alcohol the day of the accident when they decided to go boating. The collision occurred while Brown's boat was stopped to retrieve a hat belonging to Lange. Both Brown and Willis were convicted of operating watercraft while intoxicated.

On February 22, 1996, Lange (the passenger) filed suit against both Brown and Willis (the drivers) seeking damages in excess of $50,000. Brown was served with a copy of the summons and complaint at his home in Kake on March 4. The summons contained the following language in boldface type: "IF

YOU FAIL TO [ANSWER THE COMPLAINT] JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMAND[ED] IN THE COMPLAINT."

On March 22, 1996, Brown telephoned Lange's attorney and left a recorded message asking when he (Brown) was "going to court." His call was returned by Lange's attorney's receptionist, who reached Brown's mother and informed her that no court date had been scheduled and that Brown needed to answer the complaint and mail copies to the court and Lange's attorney.

Brown did not answer the complaint. On April 19, 1996, a default was entered against him. Brown was not notified of this entry of default. Willis also failed to answer, and default was entered against him on April 29, 1997.[1] A hearing to determine Lange's damages was held before a special master on July 3, 1997; Brown was not notified of this hearing. The special master recommended a damages award of $272,424.80. The superior court accepted this recommendation and, on July 21, entered judgment against Brown and Willis for that amount, plus interest, attorney's fees, and costs. The judgment against Brown and Willis totaled $321,490.15. The court did not apportion fault between Brown and Willis. Again, Brown was not notified that the judgment had been entered against him.

On November 3, 1997, the superior court issued an order commanding Brown to appear and restraining him from disposing of his property. Brown was served with this notice, which was the first formal communication Brown received from either the court or Lange since the complaint.

Brown then contacted Alaska Legal Services, who referred him to its *pro bono* program. On January 9, 1998, an attorney made an appearance on Brown's behalf and on April 8 Brown moved through counsel to set aside the default judgment on two grounds: (1) that Brown's failure to answer the complaint was "excusable neglect" and therefore the default and default judgment should be set aside pursuant to Alaska Rule of Civil Procedure 60(b)(1); and (2) that Lange's attorney had engaged in "fraud" by not notifying Brown either of the default or of the default judgment hearing, and that therefore the judgment should be set aside pursuant to Civil Rule 60(b)(3).

The superior court declined to set aside the default judgment against Brown on either of these grounds. This appeal followed.

### III. STANDARD OF REVIEW

■■■ Normally, we will reverse the trial court's refusal to set aside a default judgment pursuant to Civil Rule 60(b) only for abuse of discretion.[2] However, this appeal turns on the proper interpretation of the term "appear" in Civil Rule 55. When interpreting a civil rule, we exercise our independent judgment[3] and "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

■■■ Determining whether the superior court committed reversible error by not apportioning fault in the default judgment is an issue of statutory interpretation, which we review under the substitution of judgment standard.[5]

### IV. DISCUSSION

A. *Brown Was Not Entitled To Have Either the Entry of Default or the Default Judgment Set Aside for Lange's Failure To Provide Notice.*

As noted above, Brown telephoned Lange's attorney and asked when he (Brown) was

---

1. Willis has not appealed. The record does not show why, after obtaining an entry of default against Brown in April 1996, Lange waited over a year before obtaining entry of default against Willis.

2. See Benedict v. Key Bank of Alaska, 916 P.2d 489, 491 (Alaska 1996) (citing Bauman v. Day, 892 P.2d 817, 828–29 (Alaska 1995)).

3. See Ford v. Municipality of Anchorage, 813 P.2d 654, 655 (Alaska 1991) (holding that in cases that "involve the interpretation of a civil rule, we exercise our independent judgment").

4. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. See Longwith v. State, Dep't of Natural Resources, 848 P.2d 257, 260 n. 5 (Alaska 1992) (citing Madison v. Alaska Dep't of Fish and Game, 696 P.2d 168, 173 (Alaska 1985); Kelly v. Zamarello, 486 P.2d 906, 917 (Alaska 1971)).

"going to court." Brown now claims that this constituted an "appearance" under Civil Rule 55. Because the application of Civil Rule 55's default procedures varies depending on whether the defendant "appears," the threshold issue is whether this call, which was Brown's only response to Lange's complaint, constituted an "appearance" for Civil Rule 55 purposes.[6] We hold that it did not.

1. *Brown did not "appear" by leaving an ambiguous telephone message with Lange's attorney.*

▮ We have never explicitly defined the term "appear" in the context of the Alaska Rules of Civil Procedure. But in interpreting our civil rules we have often looked to identical federal counterparts for guidance.[7] Other courts interpreting the federal analog to our Civil Rule 55 have taken an expansive concept of what an "appearance" is.[8] And some federal courts have found an "appearance" even where the defendant's action did not "involve some presentation or submission to the court." [9] Still, the rule in the federal system "normally" is that "an appearance in an action 'involves some presentation or submission to the court.' " [10]

While we never have explicitly defined the term "appear" in the context of the Alaska Rules of Civil Procedure, in *Case v. Winters*[11] we rejected the idea that an appearance could take place without a presentation or submission of some sort to the court. *Case* involved two superior court proceedings. In one, a wife filed a motion to change custody and to obtain a judgment for past child support. Attorney Hellenthal entered an appearance for the husband. In the second case, filed a year later, the wife filed a new complaint seeking "damages" for unpaid support. Although Hellenthal did not appear in the second case, he contacted the wife's attorney and requested an extension of time to answer the complaint. His request was granted but after the time for extension expired, the wife's attorney notified him in writing that she intended to apply for default. Hellenthal did nothing. The wife's attorney requested a default under Civil Rule 55(a) without serving Hellenthal or the husband since no appearance had been filed, and a default was entered. Shortly thereafter the two cases were consolidated. After that a default hearing on damages was held, again without notice. This court held that up until

6. Civil Rule 55(a)(1) provides:

> When a party against whom a judgment for affirmative relief is sought has failed to appear and answer or otherwise defend as provided by these rules, and that fact is shown by affidavit or otherwise, the clerk shall enter a default. Service of the application is not required if the party has failed to appear.

Civil Rule 55(c)(1) governs default judgments entered by courts. It provides that "[i]f the party against whom default judgment is sought has appeared in the action, that party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to a decision on the application."

7. *See generally Hertz v. Berzanske*, 704 P.2d 767, 770 (Alaska 1985) ("Since Rules 55(e) and 60(b) are identical to their federal counterparts, ... we look to federal case law for guidance.") *superseded by statute on other grounds as noted in McConkey v. Hart*, 930 P.2d 402, 407 n. 4 (Alaska 1996). Although no Federal Rules of Civil Procedure are worded exactly the same as Alaska Civil Rules 55(a)(1) or 55(c)(1), the similarities between the federal and the Alaska schemes make it appropriate for us to look to the federal case law for guidance in interpreting "appearance."

8. *See generally Morrow County Sch. Dist. v. Oregon Land and Water Co.*, 78 Or.App. 296, 716 P.2d 766, 769 n. 4 (1986) ("The federal cases give a broad reading to ... appearance. Almost anything that indicates that the party is interested in the case will suffice.") (citation omitted); 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2686, at 47 (3d ed.1998) (noting "the general liberality in defining what conduct constitutes an appearance").

9. Wright *et al.*, *supra* note 8, § 2686, at 44; *see also New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141–42 (5th Cir.1996) (finding appearance where claimant spoke with opposing counsel and informed him that claimant would contest suit and participated in a telephonic settlement conference before a magistrate judge); *Key Bank v. Tablecloth Textile Co.*, 74 F.3d 349, 353 (1st Cir.1996) (finding appearance where defendant's informal contacts with plaintiff during negotiations, including an informal agreement not to seek an entry of default without notice, indicated a clear intent to defend suit).

10. Wright *et al.*, *supra* note 8, § 2686 at 41–42, and see authorities listed at 47–49.

11. 689 P.2d 467 (Alaska 1984).

the time of the consolidation neither the husband "nor attorney Hellenthal was entitled to service of the prior entry of default because 'no service need be made on parties in default for failure to appear.' "[12] We went on to hold that once the cases were consolidated (after the default was entered in the second case) Hellenthal was entitled to written notice of the application for default judgment under Civil Rule 55(c)(1). We set aside the default judgment, but we affirmed the entry of the default on liability in the second case.[13]

A concurrence was filed in *Case*. The concurring justices would have held that the contacts between Hellenthal and opposing counsel amounted to an appearance by Hellenthal for purposes of Civil Rule 55. The concurrence cited a number of federal cases that had found an appearance even without a presentation or submission to the court.[14] But the concurrence's view that an appearance can arise merely by contacts between the parties was rejected by the majority in *Case*.

Even if we were to adopt a more expansive notion of "appearance," Brown's minimal conduct here would not meet the new, more relaxed standard. Brown's only action came eighteen days after receiving the complaint when he made a single telephone call to Lange's attorney and left a message asking "when he was going to court." While under a sympathetic view this action may have evinced Brown's intention at that moment to defend the lawsuit, it nevertheless fails to rise to the level of an "appearance" as that word is used in Civil Rule 55. To read more into Brown's action would strain the meaning of "appearance" so fundamentally as to rewrite Civil Rule 55 from the bench—an action we decline to take.[15]

2. *Since Brown did not appear, he was not entitled to notice of Lange's applications for entry of default or for default judgment.*

The application of Civil Rule 55 explicitly depends upon whether the defendant has "appeared" in the action.[16] If the defendant does not appear, upon the plaintiff's application the clerk of court may enter a default without requiring service of the application upon the defendant.[17] Then, upon application, and again without notice to the defendant, the clerk of court may enter a default judgment if the damages are "for a sum certain or for a sum which can by computation be made certain."[18] When the damages cannot be reduced to a sum certain, as in the case at hand,[19] the superior court "may conduct such hearings or order such references as it deems necessary and proper" to "determine the amount of damages."[20] The superior court may conduct its damages proceedings *ex parte*, without requiring notice to a defendant who has failed to previously appear in the action.[21]

The superior court in this case did not err by conducting *ex parte* hearings to determine the plaintiff's damages, without requiring that Brown be notified of the hearings. The superior court's actions comported with the requirements of the civil rules. Moreover, Brown's interests must be balanced against the interests of Lange, who has a right to a timely determination of his damages so that he may begin his efforts toward the recovery of his losses. Accordingly, we hold that the superior court did not err when it did not

---

12. *Id.* at 469 (quoting Alaska R. Civil P. 5(a)).

13. *See id.* at 470 n. 8.

14. *See id.* at 471.

15. *See Caterpillar Tractor Co. v. Beck*, 624 P.2d 790, 793 (Alaska 1981) ("Rule changes are more appropriately accomplished by amendment upon recommendation of the rules committee, the bench, and the bar.").

16. *See* Alaska R.Civ.P. 55(a)(1), (b)(1), (c)(1)-(4).

17. *See* Alaska R.Civ.P. 55(a)(1).

18. Alaska R.Civ.P. 55(b)(1).

19. In the context of Civil Rule 55, we have stated that "[d]amages for bodily injury or pain and suffering by their very nature are not a fixed or liquidated sum, nor can the sum be made certain by computation." *Davis v. Criterion Ins. Co.*, 754 P.2d 1331, 1333 n. 3 (Alaska 1988).

20. Alaska R.Civ.P. 55(c)(1).

21. *See id.*

require further notification when Brown failed to appear in the action.

### B. *Lange's Attorney Was Under No Professional Obligation To Notify Brown Before Seeking the Entry of Default or the Default Judgment.*

■ Brown further argues that our decisions in *City of Valdez v. Salomon*[22] and *Hertz v. Berzanske*[23] command reversal here. Brown argues that Lange's attorney's failure to inquire as to Brown's intention to defend the action constituted a breach of the duties of professional conduct. While we have held that lawyers are obliged by professional courtesy to make such inquiries when they know the identity of and have been in contact with an opposing party's counsel,[24] we have done so in a limited context, and we have never extended the same principle to *pro se* parties.

In *Cook v. Aurora Motors, Inc.*,[25] we first announced the principle that when lawyers know the identity of opposing counsel, they should inform opposing counsel of their intent to seek an entry of default.[26] In *City of Valdez v. Salomon*,[27] we referred to this principle [28] in a case in which the defendant city's attorney had written to the plaintiff's attorney and specifically asked for the courtesy of notification if the city's carrier did not respond to the complaint:

I have referred the case to Providence Washington Insurance Company for a response, and assume that you will be hearing from them soon. In the event that no response is forthcoming, please let me know and I will enter our appearance on behalf of the City of Valdez to protect it against default.[29]

Thus, the city's attorney explicitly asked for the professional courtesy of notice in the event of its insurance carrier's failure to respond so that the city could make an appearance to prevent a default.[30] But when the carrier did not respond, the plaintiff's attorney instead applied for and obtained a default without notifying the city's attorney.[31] In part because the defendant's attorney was justified in expecting that the principle that we stated in *Cook* would be observed, we held that the superior court's later refusal to set aside that default was an abuse of discretion.[32]

In *Hertz v. Berzanske*[33] we extended the holding of *City of Valdez* to cover a party's agent.[34] In *Hertz*, the defendant's agent had contacted the plaintiff's attorney to obtain an extension of time to answer the complaint. The plaintiff's attorney had granted the defendant's agent a twenty-day extension,[35] and filed for an entry of default one day after the end of the extension without notifying the defendant's agent.[36] In reversing the trial court's refusal to set aside the default, we extended the *City of Valdez* holding to a

---

**22.** 637 P.2d 298 (Alaska 1981).

**23.** 704 P.2d 767 (Alaska 1985), *superseded by statute on other grounds as noted in McConkey v. Hart*, 930 P.2d 402, 407 n. 4 (Alaska 1996).

**24.** *See City of Valdez*, 637 P.2d at 299 (citations omitted).

**25.** 503 P.2d 1046 (Alaska 1972).

**26.** *See id.* at 1049 n. 6 (quoting American College of Trial Lawyers Code of Trial Conduct No. 14(a), at 149 (1971–72)).

**27.** 637 P.2d 298.

**28.** *See id.* at 299.

**29.** *Id.* at 298 (quoting the letter).

**30.** *See id.*

**31.** *See id.* at 298–99.

**32.** *See City of Valdez*, 637 P.2d at 299.

**33.** 704 P.2d 767 (Alaska 1985), *superseded by statute on other grounds as noted in McConkey v. Hart*, 930 P.2d 402, 407 n. 4 (Alaska 1996).

**34.** *See id.* at 772–73.

**35.** *See id.* at 768–69. At the trial court level, the parties disputed whether the extension was an "open twenty-day extension," which meant "that the plaintiffs granted an open extension of the time to answer the complaint and would not seek entry of default except upon twenty days' notice to the defendant," or was simply a twenty-day extension, which meant that the deadline for filing an answer was extended for only twenty days. *Id.* at 768.

**36.** *See id.* at 772 & n. 2.

situation in which the plaintiff's attorney had been communicating with the defendant's agent.[37]

Brown argues, "[n]o logical explanation exists as to why a *pro se* litigant should receive anything but the same notice his [or her] attorney or agent would be entitled to." We disagree. The act of retaining an attorney is a significant step a defendant may take in the process of defending against an action. It unequivocally evidences an intent to defend the case. By the same token, an agent's negotiation of a time extension to answer shows the defendant's intention to resolve the matter by settlement or, if settlement efforts are unsuccessful, by litigation. A *pro se* defendant's single call, inquiring when to go to court, without more, is not comparable. Moreover, when plaintiff's counsel (or, as in this case, counsel's employee) correctly responds to the question and properly reminds the defendant to file an answer, no further ethical obligation should be imposed on the plaintiff. Indeed, in light of the law's historical concern about giving legal advice to an opposing party,[38] it would be anomalous to require plaintiff's counsel to do more. Finally, the scope of Brown's proposed rule is unlimited because every defendant without an attorney is by definition a *pro se* defendant. The extension of the *City of Valdez* holding proposed by Brown would greatly weaken Civil Rule 55 by making continued notification necessary in any case where even the most casual contact was made.

For these reasons, we decline to extend the attorney's professional obligation (to contact known opposing counsel or an agent who has requested an extension, and to inquire of their intentions before seeking a default) to a *pro se* defendant who has made a single telephone call inquiring about a court date.

### C. *Alaska Statute 09.17.080(a) Requires the Apportionment of Fault.*

■ Brown's final argument is that the superior court was required to apportion damages in the final judgment. We agree.

Alaska Statute 09.17.080(a) requires apportionment of damages where there are multiple culpable parties:

> In all actions involving fault of more than one person, . . . the court, unless otherwise agreed by all parties . . . [and] if there is no jury, shall make findings, indicating[:] (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and (2) the percentage of the total fault that is allocated to each claimant, defendant, . . . or other person responsible for the damages. . . .

This language requires the superior court to apportion fault in rendering its final judgment. Because the superior court here did not apportion fault in establishing damages, we must remand this case for the court to do so.

## V. CONCLUSION

The superior court was correct in concluding that Brown did not "appear" for purposes of Civil Rule 55 and was therefore not entitled to notice of either the entry of default or the default judgment. In addition, counsel for Lange was under no obligation of professional courtesy to notify Brown of his intention to seek default judgment. We accordingly AFFIRM the default judgment against Brown. However, the superior court was required to apportion damages in the final judgment. Because there was no apportionment, we VACATE the final judgment and REMAND this case to the superior court for further proceedings.

BRYNER, Justice, with whom FABE, Justice, joins, dissenting.

I agree that Brown's call to Lange's attorney did not amount to a Rule 55 "appearance" but disagree with the court's conclusion that Lange's attorney had no duty to notify Brown of his intent to apply for entry of default. In my view, this court's caselaw

---

37. *See id.* at 772–73.

38. *See* Model Rules of Professional Conduct Rule 4.3 cmt. (1998) ("During the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel."); Model Code of Professional Responsibility, DR 7–104(A)(2) (1980).

obliged Lange's attorney to inform Brown of the impending default.

*Cook v. Aurora Motors, Inc.* was the first of our cases to recognize an attorney's professional duty to give reasonable notice to an opposing party before applying for a default.[1] As the court's opinion today correctly notes,[2] *Cook* drew this duty from the American College of Trial Lawyers Code of Trial Conduct, which, at the time, advised:

> When [a lawyer] knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.[3]

The Trial Lawyers Code obviously regards this duty a "professional courtesy"—that is, as an obligation that one lawyer owes another by virtue of their common bond in the legal profession. Yet even though both parties in *Cook* were represented by counsel,[4] *Cook* carefully avoided describing the notice requirement as this kind of narrow, lawyer-to-lawyer duty. After quoting the Trial Lawyers Code approvingly, *Cook* found that "[t]his practice is a highly desired courtesy *to the opposing side.*"[5]

We reaffirmed *Cook*'s notice requirement in *City of Valdez v. Salomon.*[6] Like *Cook*, *Salomon* involved lawyers on both sides of the litigation.[7] More recently, though, in *Hertz v. Berzanske,*[8] we expressly extended the notice requirement to situations involving unrepresented litigants.[9] In *Hertz*, an injured motorist sued Hertz for injuries arising from a collision. Hertz's insurance adjuster, Dean, contacted the plaintiff's attorney, Gregg, and asked for twenty additional days to answer the complaint.[10] After the twenty-day deadline passed, Gregg moved for entry of default without informing either Hertz or Dean of his intentions.[11] This court, relying on *Cook* and *Salomon,* found the default improper, holding that Gregg breached his duty to notify his opponent:

> While Gregg did send a letter to Dean advising him of the twenty day extension, he made no effort to notify Dean of his intent thereafter to seek a default, or to inquire about Dean's intention to proceed. We have adopted the following rule of trial conduct:
>
>> When [a lawyer] knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.
>
> The same rule of inquiry should apply when a lawyer knows the identity of an *agent* representing an opposing party, even if he does not know the identity of opposing counsel. "[T]he purpose of the default procedure is to prevent a procrastinating defendant from unduly delaying a case; it should not be regarded as a tactical tool by which a plaintiff may obtain judgment without the bother and expense of litigation." While Gregg had the procedural right to seek a default entry, he was obligated to inquire into Hertz's intent to proceed and to inform Hertz of his intent to seek a default entry.[12]

*Hertz* thus recognizes that the duty of pre-default inquiry and notice can arise when a plaintiff's attorney is contacted by a non-

---

1. 503 P.2d 1046, 1049 n. 6 (Alaska 1972).

2. *See* Op. at 827 n. 26.

3. American College of Trial Lawyers Code of Conduct No. 14(a), at 149 (1971–72), incompletely quoted in *Cook,* 503 P.2d at 1049 n. 6; accurately quoted in *City of Valdez v. Salomon,* 637 P.2d 298, 299 (Alaska 1981).

4. *Cook,* 503 P.2d at 1049 n. 6.

5. *Id.* (emphasis added).

6. 637 P.2d at 299.

7. *See id.*

8. 704 P.2d 767 (Alaska 1985).

9. *See id.* at 772–73.

10. *See id.* at 768–69.

11. *See id.* at 769.

12. *Id.* at 772–73 (citations omitted) (emphasis added).

lawyer on behalf of the defendant.[13] More significantly, in holding that Gregg "was obligated to inquire into **Hertz**'s intent to proceed and to inform **Hertz** of his intent to seek a default entry," *Hertz* expressly recognizes that the plaintiff's lawyer owes this duty not to the defendant's agent, but directly to the defendant.[14]

Thus, in concluding that *Cook* merely establishes a rule of "professional courtesy," today's opinion misreads our caselaw. Until now, we have always viewed *Cook*'s notice requirement not just as a courtesy among lawyers, but as a duty owed directly to the defendant.[15]

The court offers two reasons for limiting *Cook* to attorneys and agents. Neither is persuasive.

First, the court asserts, "[t]he act of retaining an attorney ... unequivocally evidences an intent to defend the case."[16] But surely this overstates the case. A defendant who has just been served with a complaint will often consult an attorney as a tentative first step in deciding what to do. If the defendant ultimately decides to hire the attorney and defend the case, the event that "unequivocally evidences" this decision is the lawyer's formal entry of appearance. And because this entry formally signals a commitment to defend, a lawyer who is consulted about defending but subsequently fails to appear and answer necessarily raises serious questions about the defendant's intent.

So too, a defendant's early discussion of settlement through a lawyer or a non-attorney agent signals neither a commitment to settle nor an unequivocal decision to defend.

*Hertz* provides a useful example. Hertz's adjuster, Dean, discussed the possibility of settlement with plaintiff's counsel, Gregg, before Gregg had even filed a complaint.[17] Later, after asking Gregg for an informal extension of time to answer, Dean failed even to acknowledge Gregg's letter granting the extension and discussing a settlement.[18] At the time Gregg applied for default, Hertz's insurer, Providence Washington, had not yet assigned an attorney to the case, and it is unclear whether Providence Washington had even made a final decision to cover Hertz's claim.[19]

These circumstances hardly constitute "unequivocal evidence" of Hertz's commitment to defend his claim. To the contrary, when viewed in conjunction with Hertz's failure to meet the deadline for filing his answer, they raise serious questions about his intent. Yet despite these uncertainties—indeed, because of these uncertainties—this court concluded that, Gregg was "obligated to inquire into Hertz's intent to proceed and to inform Hertz of his intent to seek a default entry."[20] By specifying that Gregg's duty encompassed the duty to "inquire into Hertz's intent to proceed,"[21] we unmistakably signaled that our decisions in *Cook, Salomon,* and *Hertz* are founded on the existence of doubt concerning the defendant's intent to defend, not on unequivocal evidence of a decision to defend. Thus, the force driving the duty is uncertainty, not certainty.

In the case at hand, the circumstances surrounding Brown's failure to file a timely answer raised substantial questions about his intent to defend. Brown called Lange's attorney's office within the allowable time for

---

**13.** Although Hertz's adjuster, Dean, was hired to investigate by Providence Washington, our decision specifically described Dean as Hertz's agent, not Providence Washington's. *See id.*

**14.** *Id.* at 773.

**15.** Indeed, it is noteworthy that, although the court's opinion today calls the duty of notice that we adopted in *Cook* a "professional courtesy," *see* Op. at 827, our relevant cases—*Cook, Salomon,* and *Hertz*—never used this term.

**16.** Op. at 828. The court similarly reasons that, "[b]y the same token, an agent's negotiation of a time extension to answer shows the defendant's

intention to resolve the matter by settlement or ... by litigation." *Id.*

**17.** *See Hertz,* 704 P.2d at 768.

**18.** *See id.* at 768–69.

**19.** *See id.* Our opinion in *Hertz* suggests that, at the time of the default, Providence Washington had not yet decided whether it would provide Hertz with counsel. *Id.* at 769.

**20.** *Id.* at 773 (citations omitted).

**21.** *Id.*

filing an answer; he was not represented by counsel but expressed a clear interest in defending the case. Brown left his message on the law firm's voice mail. He also left his telephone number in Kake, where he lived with his parents. A legal assistant returned Brown's call but was unable to reach him because he was out fishing; she spoke with his mother instead, and asked her to relay the firm's message. The legal assistant told Brown's mother that no court date had yet been set and that Brown would need to file an answer to the complaint. But the legal assistant did not remind Brown of the deadline for answering or the consequences of failing to answer. Neither did she encourage him to consult an attorney if he had further questions.[22] Less than a month later, with no further effort to establish contact or inquire into Brown's intentions, Lange's attorney moved for entry of default.

As we emphasized in *Hertz* and *Salomon*, "[t]he purpose of the default procedure is to prevent a procrastinating defendant from unduly delaying a case."[23] Here, the circumstances surrounding the default hardly suggest deliberate procrastination; to the contrary, they strongly suggest a delay stemming from miscommunication, misunderstanding, or confusion. In my view, these circumstances generate the same kind of uncertainty that led us to impose the duty of inquiry and notice in *Cook, Salomon,* and *Hertz.*

Nor do the circumstances of this case suggest that compliance with the duty of inquiry and notice would have been burdensome or impractical. Lange's attorney knew Brown's telephone number and knew that Brown lived with his parents in the small community of Kake. Nothing in the record indicates that Brown could not have been reached with a minimal expenditure of time and effort.[24] Given these circumstances, I fail to see why Lange's attorney should be relieved of the duty that would have applied had Brown been represented by counsel or helped by an agent. In effect, the court simply punishes Brown for being a pro se litigant.

As its second reason for declining to apply *Cook, Salomon,* and *Hertz* to cases involving pro se litigants, the court expresses the fear of ethical problems grounded on "the law's historical concern about giving legal advice to an opposing party."[25] But the court's fear is groundless. The court bases its ethical concern on Rule 4.3 of the Model Rules of Conduct,[26] which Alaska has adopted as Rule 4.3 of the Alaska Rules of Professional Conduct:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer

---

**22.** The law firm's records summarized the contact as follows:

Lange, Robert Ernest, 18350—for DLF—3/22/96—On 3/22/96, 10:38 DLF wrote:
Wesley Brown Jr. called this am and wanted to know when he was going to be going to court. I returned his call to let him know there wasn't a court date yet but that he needed to answer the complaint—mail it to the courts w/a copy to CHP.
I left the message w/his mother as he had left to go fishing shortly before I called. The mother did tell me that John Willis the other person you are wanting to serve is in Juneau attending a . . . program. She did say that Mr. Brown has not attended his . . . program yet. Mr. Brown's phone # is . . . .
Brown would later indicate that he never received the message. The trial court did not question his explanation.

**23.** *Hertz,* 704 P.2d at 772 (quoting *Salomon,* 637 P.2d at 299 n. 1).

**24.** The court suggests that the failure to comply with *Cook* might be excused on equitable grounds because "Brown's interests must be balanced against the interests of Lange, who has a right to a timely determination of his damages." Op. at 826. But the record demonstrates that this equitable concern is unfounded: Lange's attorney applied for entry of default less than two months after filing Lange's complaint. Having secured the default, he waited more than fourteen months before moving for entry of judgment. Obviously, then, Lange's attorney was in no hurry to obtain "a timely determination of [Lange's] damages." *Id.*

**25.** Op. at 828.

**26.** Op. at 828 & n. 38 (quoting Model Rule 4.3 cmt. (1998)).

shall make reasonable efforts to correct the misunderstanding.[27]

Alaska's commentary to this rule explains:

An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client.[28]

As can be seen, the Alaska Rule and its commentary have nothing to do with the present situation. Rule 4.3 and its Alaska commentary address the issue of communicating with unrepresented litigants in a way that might cause them to misunderstand the opposing lawyer's true intentions and interests. But compliance with *Cook, Salomon,* and *Hertz* creates no such danger. These cases require a plaintiff's attorney, before applying for default, "to inquire into [the defendant's] intent to proceed and to inform [the defendant] of [plaintiff's] intent to seek a default."[29] Because the core purpose of this requirement is to ensure full disclosure of an impending conflict, nothing in Rule 4.3 or the Alaska commentary could conceivably bar such inquiry and notice.

The court nonetheless suggests possible problems arising from a sentence of commentary that appears in Model Rule 4.3; this Model Rule commentary warns: "During the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel."[30] But, Alaska's commentary to Rule 4.3 conspicuously omits this sentence of the Model Rule commentary, even though the Alaska rule incorporates the rest of Model Rule 4.3's commentary. Because the omitted commentary strays so far from the text of the Rule itself, Alaska's decision to omit the commentary is hardly surprising.[31] Moreover, even if the Model Rule's comment did apply in Alaska, it would not advance the court's position, since a plaintiff's attorney who notifies a pro se defendant that the plaintiff intends to apply for a default cannot plausibly be deemed to be giving the kind of "advice to an unrepresented litigant" that the commentary forbids.

The court thus fails to offer any sound reason why *Cook* should not extend the present situation. In *Cook* we emphasized that the chief purpose of requiring a pre-default warning is to "help avoid unnecessary, time-consuming motions before the court."[32] Lange's attorney's decision to seek entry of default without prior inquiry or notice to Brown promised exactly this kind of lengthy and unnecessary litigation. The present appeal fulfills the promise. To avoid similar problems, I would hold that the *Cook* duty of inquiry and notice applied in this case.[33]

---

27. Alaska R. Prof. C. 4.3.

28. Alaska R. Prof. C. 4.3 cmt.

29. *Hertz*, 704 P.2d at 773.

30. *See* Op. at 828 n. 38 (quoting Model Rule of Prof. Conduct 4.3 cmt (1998)).

31. The omitted commentary's overbreadth can be readily illustrated by applying the commentary to the present case. Here, Lange's attorney instructed his legal assistant to tell Brown that "he needed to answer the complaint—mail it to the courts [with a] copy to [Lange's attorneys]." This advice seems sensible and proper. Yet under the literal terms of the omitted Model Code commentary, we would have to conclude that the advice violated Rule 4.3 by (1) improperly advising Brown (an unrepresented litigant) how to handle his case ("he needed to answer the complaint" and "mail it to the court"); and (2) failing to give him the only advice that the comment actually permits—the advice "to obtain counsel."

32. 503 P.2d at 1049 n. 6.

33. In comparable circumstances, courts in other jurisdictions have recognized an ethical duty to inquire or give notice before seeking a default. *See, e.g., Bellm v. Bellia,* 150 Cal.App.3d 1036, 198 Cal.Rptr. 389, 390 (1984) (suggesting that "as a matter of professional courtesy counsel should have given notice of the impending default"); *Smith v. Johnston,* 711 N.E.2d 1259, 1264 (Ind.1999) (specifying that "courtesy, common sense and the constraints of [the] judicial system" required an attorney to attempt to make contact with his opponent before seeking a default judgment and suggesting that failure to do so was an ethical violation); *Lalumera v. Nazareth Hosp.,* 310 Pa.Super. 401, 456 A.2d 996, 999 (1983) (discussing the court's frequent suggestion that courtesy required counsel to give notice before seeking a default); *Hartwell v. Marquez,* 201 W.Va. 433, 498 S.E.2d 1, 4 n. 5 (1997) (requiring a lawyer seeking a default or dismissal to first notify opposing counsel and observing that the ethical duties of "courtesy, candor, honesty, diligence, fairness and cooperation" are owed not

Accordingly, I would reverse the superior court's judgment, vacate the default, and remand for trial on the merits.

only to courts and counsel, but also to the parties themselves); *Miro Tool & Mfg., Inc. v. Midland Mach., Inc.*, 205 Wis.2d 650, 556 N.W.2d 437, 440–43 (1996) (Anderson, J., concurring) (lamenting that Wisconsin did not follow California in recognizing an ethical duty to inform opposing counsel before seeking entry of a default). Some of these rulings confirm that this duty extends to the opposing party, not just to opposing counsel. *See, e.g., Smith,* 711 N.E.2d at 1263–64; *Hartwell,* 498 S.E.2d at 4 n. 5.