Richard SNYDER, Appellant,

v.

AMERICAN LEGION SPENARD
POST NO. 28, a Non–Profit
Corporation, Appellee.

Nos. S–10860, S–11220.

Supreme Court of Alaska.

Sept. 2, 2005.

Richard Snyder, pro se, Anchorage, and Darryl L. Thompson, Law Office of Darryl L. Thompson, Anchorage, for Appellant.

Ronald A. Offret, Aglietti, Offret & Woofter, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION

The superior court granted summary judgment to the American Legion Spenard Post No. 28 after the defendant, Richard Snyder, failed to appear at trial. After final judgment was entered, Snyder appealed. Subsequently, he moved for relief under Alaska Civil Rule 60(b)(1) and (4). The superior court denied this motion, and from this denial Snyder has also appealed. In this opinion we consider both appeals and conclude that neither has merit. We therefore affirm.

### II. PROCEEDINGS

On September 25, 2001, Post 28 sued Snyder, its former finance officer. The complaint alleged that from January 1998 to October 1999 Snyder wrote over 144 checks payable to himself in an amount in excess of $110,000 for which no receipts were provided. The complaint alleged that Snyder misappropriated funds for his own use and failed to provide an accounting. The complaint requested compensatory damages and punitive damages. Attached to the complaint as Exhibit A was a listing of 144 checks by date

and number that Snyder had allegedly fraudulently written to himself. The total amount of the checks set forth in the exhibit is $111,522.51.

Snyder answered the complaint through counsel. The answer denied the allegations of wrongdoing and stated various affirmative defenses such as unclean hands, estoppel, and comparative negligence. Snyder's attorney was permitted to withdraw on June 12, 2002. A hearing was held on that date at which Snyder was present. Snyder confirmed his mailing address to the court for purposes of service of pleadings. All subsequent notices and motions were mailed to that address and not returned. Nevertheless, Snyder did not defend the case after his lawyer withdrew. He did not appear for his August deposition, respond to discovery propounded in July, file a witness or exhibit list, respond to Post 28's motions for summary judgment and discovery sanctions filed on August 30, or appear at trial on September 23, 2002.

Snyder, a North Slope worker on a three-week-on/three-week-off rotation, claims he received no notice of discovery or trial, although he concedes that the documents may have been received and misplaced while he was working. Snyder also claims his attorney did not advise him of critical dates in the case before his withdrawal, but he admits that he had the pretrial planning report that listed three proposed trial dates, with the first choice as September 23.

When Snyder failed to appear at trial, the superior court granted Post 28's motion for summary judgment. Post 28 had requested that Snyder's answer and affirmative defenses be struck as a discovery sanction, thereby warranting summary judgment because there would be no disputed factual issues. On September 23, 2002, the superior court signed the order prepared by the counsel for Post 28, which provided in relevant part as follows:

> The Court hereby orders summary judgment in favor of Plaintiff and strikes Defendant Snyder's Answers and Affirmative Defenses.
>
> And the Court further finds that Defendant Snyder breached his fiduciary respon-

sibility to the Post and trial of this matter set for the week of September 23, 2002, is cancelled.

The court also added in handwriting the following additional language: "The motion for summary judgment was also granted because the defendant did not oppose the motion." The court did not sign a separate proposed form order submitted by Post 28 that would have granted its motion for discovery sanctions; instead a line was drawn across the form and "moot" was written on it.

On September 27, 2002, counsel for Post 28 submitted a form final judgment in the principal amount of $111,522.51, the sum of the 144 checks that Snyder had written to himself, plus interest, costs, and attorney's fees. The document was served by mail on Snyder but he did not respond to it. On October 10, 2002, the superior court signed the proposed judgment. Snyder filed a timely appeal.

During the pendency of the appeal Snyder, on February 24, 2003, filed a motion for relief from the judgment. He contended that (1) he was entitled to relief under Civil Rule 60(b)(4) "because the trial court acted in a manner that was inconsistent with due process," and (2) his failure to respond to discovery, failure to appear at his deposition, and failure to appear for trial were the result of excusable neglect under Civil Rule 60(b)(1).

Superior Court Judge John Suddock denied this motion in an opinion that carefully reviewed both the facts and the law. Snyder timely appealed from this denial. The appeals were consolidated by this court. We set forth Judge Suddock's opinion at this point:

### ORDER

The American Legion Spenard Post No. 28 ("Legion") sued Richard Snyder, a former officer, for embezzlement of about one hundred thousand dollars. Mr. Snyder retained counsel, Jody Brion. The Court issued an order setting trial for September 23, 2002. When Mr. Snyder failed to pay Brion, he was permitted to withdraw, on June 12, 2002.

On July 19, 2002, the Legion promulgated discovery requests seeking Mr. Snyder's bank account and investment statements, so that it could trace the allegedly embezzled funds. Mr. Snyder did not answer this discovery.

Also on July 19, the Legion sent Mr. Snyder a Notice of Deposition for August 9, 2002. Mr. Snyder did not appear for his deposition.

On August 30, 2002, the Legion moved for discovery sanctions, and for summary judgment on liability and damages. Mr. Snyder did not respond to either motion. He filed no witness list or exhibit list. To all appearances, from the withdrawal of his attorney on June 10, through the trial date and the entry of judgment on October 10, 2003, a period of some four months, Mr. Snyder completely ignored his litigation. He did so, even though by his own admission he actually possessed the Report of Party's Planning Meeting signed by his attorney on December 18, 2001, requesting a trial date of either September 23, September 30, or October 23, 2002.

On September 23, 2002, Mr. Snyder did not appear for trial. The Court granted the unopposed Motion for Summary Judgment, and denied the Motion for Discovery Sanctions as moot.[1] The Court signed a judgment on October 10, 2002, without objection from Snyder.

On February 24, 2003, Mr. Snyder moved pursuant to ARCP 60(b)(1,4) for relief from judgment. He alleges excusable neglect under 60(b)(1), and a due process violation under 60(b)(4).

Mr. Snyder explains his failure to answer the summary judgment motion, as follows:

> Regarding the Motion for Summary Judgment, and the Motion for Discovery Sanctions, I do not remember ever receiving those documents. It is possible that the documents arrived when I was out-of-town and then misplaced, but I certainly do not remember seeing them. I work on the North Slope on a 3–week

---

1. The Legion had filed a proposed order granting its motion for discovery sanctions. Judge Sanders drew a line through the text and wrote the word "moot" on the proposed order. There is no indication the stricken order was served on either party.

rotation ... and I was on the North Slope on 23 September 2002, the trial date. I did not know that I was supposed to be in trial, as the only document that I had was a copy of a document entitled the parties planning order, which listed three possible trial dates. Had I been warned and properly advised as a pro se defendant, either by my counsel or by the Court, I would have been able to file some kind of response or sought out some help in filing a response. But I received no warnings or advice from anyone regarding discovery, or the Motion for Summary Judgment. Also, I am not familiar with the rules regarding procedure in the trial courts, and I have no experience in civil matters.

Affidavit of Richard Snyder, Ex. G to Plaintiff's opening memorandum.

[Snyder's] claim of excusable neglect in failing to oppose the summary judgment motion thus rests on a service related ground and a *pro se* ineptitude ground. The pleadings were all sent to his address, the same address at which his wife signed for the service of the original complaint. Mr. Snyder makes no allegation of postal irregularity or problems with receiving mail. The items were not returned to the Legion as undeliverable. He raises no issue of fact as to whether the pleadings were properly served on him pursuant to the civil rules.

Nor does Mr. Snyder offer an explanation of why he did not read his mail in the normal course. As a litigant, he is required to provide a service address. Since a Court cannot literally move a litigant's eyes across a page, service alone constitutes constructive knowledge of the data contained in a pleading. In the exercise of reasonable caution, a litigant must understand that pleadings requiring affirmative responses will be served at varied times during the litigation. If a litigant chooses to absent himself from his address for periods of time, he must make provision for forwarding of mail, given that the civil rules can require a response to a pleading within ten days. At the very least, a litigant must make provision to gather and read his mail upon his return to the service address.

Here, Mr. Snyder offers absolutely no explanation for his failure to read his mail. Indeed, he does not exclude the possibility that he simply declined to open the envelopes, set them aside, and lost track of them. He does not aver that he is a particularly messy housekeeper; or that he is an alcoholic; or that he was depressed; or that he was fighting with his wife, who perhaps sabotaged him. He simply states that he does not presently recall the documents, and that they were possibly misplaced.

Were this deemed a basis for a finding of excusable neglect, any litigant willing to swear to a lack of present recollection of receipt of any pleading would have an automatic excuse for derailing a lawsuit. Absent some explanation of the reasons why he did not behave as postal patrons normally behave, and as litigants are required to behave, Mr. Snyder raises no basis on which the Court can ground a finding of *excusable* neglect.

Secondly, Mr. Snyder argues that once his counsel withdrew, the Court should have explained litigation procedure to him, including the necessity to oppose motions for summary judgment. If, as he alleges, he did not read the Motion for Summary Judgment, such an advisement would not have mattered. Further, our Supreme Court has neither required nor encouraged trial courts to conduct training seminars for *pro se* litigants. "The superior court was under no duty to warn [Mr. Snyder] of the necessity of opposing the [Legion's] Motion for Summary judgment." *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989).

Mr. Snyder does not allege that, in fact, he was unaware that motions for summary judgment need to be opposed. In effect, he is arguing that *pro se* litigants are entitled to be read their rights, like defendants at a criminal arraignment; further, failure to do so *per se* entitles a litigant to relief from procedural defaults.

The Alaska Supreme Court has consistently held that litigants who are litigating

in good faith but who manifest ignorance of procedural requisites are entitled to solicitude. See *Kaiser v. Sakata*, 40 P.3d 800 (Alaska 2002). However, courts are not required to train *pro se* litigants in rudimentary matters of civil procedure that are either common knowledge or readily discerned through the most cursory reading of the civil rules:

> We decline to extend *Breck* to require judges to warn *pro se* litigants on aspect of procedure when the *pro se* litigant has failed to at least file a defective pleading. It strikes us as common knowledge that initiating and pursuing a civil lawsuit can be a difficult and complex procedure. The Alaska Rules of Civil Procedure have been promulgated for the specific purpose of giving fair and reasonable notice to all parties of the appropriate procedural standards that should be uniformly applied when any party, including a *pro se* litigant, seeks relief in the pending action ... we also choose not to extend the protections some courts have afforded *pro se* prisoners to other *pro se* litigants. To require a judge to instruct a *pro se* litigant as to each step in litigating a claim would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side. We hold that the superior court was under no duty to warn [the litigants] of the necessity of opposing the defendant's motion for summary judgment.

*Bauman*, supra p. 1099.

Mr. Snyder does not appear before this Court as a good faith litigant trying to do his best, defeated by esoteric procedural requisites. He makes no showing that he made the least effort prior to entry of judgment to be a responsible litigant. He makes no showing of extraneous difficulties, such as mental illness or alcoholism, which explain his conduct. Since neither of Mr. Snyder's asserted bases for a finding of excusable neglect is sustainable, relief under ARCP 60(b)(1) is denied.

Mr. Snyder also argues that any imposition of litigation ending sanctions for discovery violations was impermissible. Judge Sanders did not impose discovery sanctions, but rather denied the Motion for Sanctions as moot. Instead, he granted an unopposed Motion for Complete Summary Judgment. He did so against a litigant who had not appeared for his deposition; who had not responded to discovery requests; who had not answered the summary judgment motion; who plausibly appeared from the summary judgment motion and supporting affidavits to have embezzled in fact; who had filed no witness nor exhibit list; and who had not appeared for trial.

In *Bauman*, supra, the Supreme Court noted that the proponent of a summary judgment motion has no absolute right to prevail, merely because the opponent fails to respond. The Court analyzed defendant's claims, and found them unlikely to overcome the State's qualified immunity defenses. The defendants had moved below for reconsideration, but had still not raised issues of material fact. On these facts, the Court allowed the summary judgment to stand.

In the instant case, Mr. Snyder first established the existence of material issues of fact in his affidavits filed February 24, 2003, five months after the grant of summary judgment. Had he done so in a timely motion for reconsideration, *Bauman* suggests that the case should have proceeded to trial.

This case is not *Bauman*. The Baumans were behaving as active litigants. As Mr. Snyder notes, the instant case is more analytically akin to a default. Mr. Snyder was not physically present for trial. He was constructively on notice of his trial date, because his attorney was served with the Court's pretrial order. He had actual knowledge that his attorney had requested a trial setting in the September–October time frame. He does not allege that his attorney withheld the file from him, or refused to divulge the trial date. Mr. Snyder simply abandoned the litigation, for a period exceeding four months.

Under those circumstances, the grant of summary judgment to the Legion was a reasonable way to resolve the lawsuit. Mr. Snyder's citations to discovery violation cases are not on point. His right to due

process was not violated when the court granted judgment against him as a defaulting litigant. His right to relief from the consequences of his default is via a showing of excusable neglect, which he has utterly failed to do.

Mr. Snyder's Motion For Relief From Judgment pursuant to ARCP 60(b)(1,4) is denied.

## III. STANDARD OF REVIEW

■■■ A grant of summary judgment is reviewed de novo.[1] We review a court's refusal to set aside a judgment pursuant to Alaska Civil Rule 60(b) for abuse of discretion.[2] We also review for abuse of discretion a court's decision on guidance to a pro se litigant.[3]

## IV. DISCUSSION

### A. The Direct Appeal–Entry of Default Against Snyder

■■■ Snyder argues that the superior court abused its discretion in granting discovery sanctions that resulted in summary judgment against him. Post 28 contends that the discovery sanctions were dismissed as moot and that the court entered summary judgment because Snyder failed to oppose the motion and to appear at trial.

■■■ We may affirm a judgment on any grounds that the record supports, even if not relied on by the superior court.[4] In Snyder's

case, the grant of judgment against him could have been based on his non-appearance at trial. Alaska Civil Rule 55(c)(1) provides that "if [a] party fails to appear for trial ... the court may proceed ex parte upon any motion for default or default judgment."[5] When Snyder failed to appear at trial on September 23, 2002, the superior court could have, in its discretion, entered a default against Snyder based on this provision. The rule that an appellate court may affirm a judgment on any ground supported by the record regardless of whether the ground was relied on by the trial court should not ordinarily extend to discretionary rulings that the court might properly have declined to make. But where it is clear that the court would have exercised its discretion in a manner that upholds the judgment, we believe that an appellate court can properly apply the rule.

That is the case here. When Snyder did not appear for trial, Superior Court Judge Eric T. Sanders granted Post 28's motion for summary judgment, employing the reasons stated in the proposed order lodged by Post 28 (Snyder's answers and affirmative defenses were stricken and Snyder breached his fiduciary responsibility to Post 28) and added as another reason Snyder's non-opposition to the summary judgment motion. Judge Sanders obviously believed at this point that Snyder had forfeited his right to defend the

---

1. *E.g., Native Vill. of Elim v. State,* 990 P.2d 1, 5 (Alaska 1999).

2. *E.g., Brown v. Lange,* 21 P.3d 822, 824 (Alaska 2001).

3. *E.g., Genaro v. Municipality of Anchorage,* 76 P.3d 844, 845 (Alaska 2003).

4. *E.g., Marshall v. First Nat'l Bank of Alaska,* 97 P.3d 830, 835 (Alaska 2004); *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961) ("[I]t is a rule of law that an appellee may urge, and the appellate court should consider in defense of a decree or judgment any matter appearing in the record, even if rejected below and even if appellee's argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.").

5. Civil Rule 55(c)(1) provides:

In all other cases the party entitled to a default judgment shall apply to the court there-

for; but no default judgment shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom default judgment is sought has appeared in the action, that party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to a decision on the application. *This written notice requirement and the memorandum requirement of (c)(2) do not apply if the party fails to appear for trial in which case the court may proceed ex parte upon any motion for default or default judgment. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.* (Emphasis added.)

case. If Post 28's counsel had requested the additional remedy of entry of a default under Rule 55(c)(1) it seems clear that such a request would have been granted. Entry of default would unquestionably have been proper, for the "fails to appear for trial" language of the rule was specifically designed to end the previously existing uncertainty as to a trial court's power in cases like this. We could in theory order a limited remand requesting the trial judge to decide whether he would have exercised his discretion to enter a default, but we consider that such a remedy under the circumstances of this case would be a pointless judicial exercise. In addition, Judge Sanders has retired from the bench and is actively practicing law, so the availability of this option is unclear. We conclude therefore that judgment against Snyder should be affirmed based on his failure to appear for trial.

■ The superior court's issuance of a final judgment awarding $111,522.51 in damages was also justified. The superior court was authorized to proceed ex parte and without notice to determine damages under subparagraph (c)(1). Under that subsection a party who fails to appear for trial has the same status as a party who has not appeared at all in the case. In such cases ex parte proceedings to determine damages are permissible even when the damages cannot by computation be reduced to a sum certain:

> When the damages cannot be reduced to a sum certain, as in the case at hand, the superior court "may conduct such hearings or order such references as it deems necessary and proper" to "determine the amount of damages." The superior court may conduct its damages proceedings *ex parte*, without requiring notice to a defendant who has failed to previously appear in the action.[6]

Moreover, the damages claim in this case was "for a sum certain or for a sum which can by computation be made certain" and thus no hearing on damages was required.[7] Post 28 alleged that Snyder fraudulently wrote 144 checks to himself, totaling $111,522.51, and attached a list of the checks to its complaint. With its summary judgment motion, Post 28 submitted an affidavit from a member of its audit committee verifying that 144 checks were written by Snyder, that they totaled $111,522.51, and that when the committee asked Snyder for receipts to back up the checks he did not respond, "and has refused to answer our requests for information other than to say he gave receipts to the Post's accountant." Post 28 also submitted excerpts from the deposition of the accountant who testified that he did not receive receipts from Snyder and that if he received vendor invoices from Snyder, that information would be returned each month: "But with respect to expense documentation, that went back to the Post every month-what small amount of information we ever had." The accountant also testified that it was a usual and customary practice for Post financial officers to reimburse themselves for purchases made from personal funds for Post purposes.

This showing does not establish that Snyder necessarily embezzled the proceeds from each of the checks. The accounting requested by Post 28 was designed to determine that question. But having failed to appear for trial, Snyder was no longer entitled to an accounting.

■ The effect of a default is to establish as true the allegations of the complainant, unless they are clearly untrue:

> [A] default establishes the well pleaded allegations of the complaint unless they are incapable of proof or are contrary to facts judicially noticed or to uncontroverted evidence presented by the parties. Uncontroverted evidence disproving the allegations of plaintiff's complaint refers to evidence that "could not possibly be rebutted if the non-defaulting party were permitted a trial." "If the evidence offered by the defaulted party merely tends to show that an allegation is not true, then the allegation must be taken as true." [8]

---

6. *Brown,* 21 P.3d at 826 (footnotes omitted).

7. *See* Alaska R. Civ. P. 55(b)(1), (c)(1).

8. *Syndoulos Lutheran Church v. A.R.C. Indus., Inc.,* 662 P.2d 109, 112 (Alaska 1983) (citations omitted). In *Syndoulos* these principles were applied to a liability rather than a damages question. But we believe that they should apply to this case because this is in part an accounting action in which liability and damages are inextricably intertwined.

In this case there is a well pleaded allegation that "Snyder fraudulently took the money belonging to plaintiff American Legion in the amounts and by the checks set forth on Exhibit A, attached hereto," referring to the list of 144 checks. There is also some evidence that not all the checks represented fraudulent transactions. But this evidence is not "uncontroverted evidence" in the sense required by the applicable standard because it is not evidence "that could not possibly be rebutted." We conclude therefore that given his failure to appear, Snyder is precluded from defending on the grounds that the proceeds from the checks in question were not appropriated by him.

### B. Appeal from the Denial of Rule 60(b) Relief

Snyder argues that the superior court erred when it denied his motion to set aside the judgment under Civil Rule 60(b)(1) and (b)(4). The arguments he makes do not go beyond those that he presented to the superior court. We believe that they were properly rejected for the reasons expressed by the superior court in its opinion, which we have set out above.

## V. CONCLUSION

The judgment of the superior court of October 10, 2002, is AFFIRMED. The order of the superior court of August 21, 2003, denying Snyder's motion for Civil Rule 60(b) relief is also AFFIRMED.

BRYNER, Chief Justice, dissenting.

I disagree with the court's decision to affirm the judgment against Snyder. In my view, the judgment cannot be upheld for several interrelated reasons.

Because the superior court dismissed Snyder's case without independently reviewing the record, its dismissal cannot properly be affirmed on the theory that it was a summary judgment warranted by Snyder's failure to respond to Post 28's motion for summary judgment. For despite Snyder's failure to respond, "[i]t remain[ed] the duty of the trial court to determine whether the record present[ed] any factual issues which would preclude the entry of summary judgment as a matter of law." [1]

Nor can the judgment against Snyder be sustained as a sanction for his discovery violations. Civil Rule 37(b)(3) prohibits a trial court from ordering dispositive discovery sanctions unless it first finds that the violation was willful and that no lesser sanction would be effective. [2] Our case law separately commands similar findings. [3] Here, the trial court failed to comply even minimally with these requirements.

The opinion attempts to avoid these deficiencies by affirming on an alternative theory. Even though the superior court actually dismissed the case on summary judgment and cancelled the trial, the opinion reasons that Snyder's failure to appear for trial could have justified the entry of a default against him; concluding that the trial court plainly would have taken that course if the case had not been dismissed on summary judgment, the opinion treats Snyder's judgment as one entered upon his default.

But even if this assumption were true, that is, even if it were clear that the trial court would have held Snyder in default for miss-

---

1. *Am. Rest. Group v. Clark,* 889 P.2d 595, 598 (Alaska 1995).

2. Alaska R. Civ. P. 37(b)(3) states:

    Prior to making an order [for sanctions] under sections (A), (B), or (C) of subparagraph (b)(2) the court shall consider
    (A) the nature of the violation, including the willfulness of the conduct and the materiality of the information that the party failed to disclose;
    (B) the prejudice to the opposing party;
    (C) the relationship between the information the party failed to disclose and the proposed sanction;

(D) whether a lesser sanction would adequately protect the opposing party and deter other discovery violations; and
    (E) other factors deemed appropriate by the court or required by law.
    The court shall not make an order that has the effect of establishing or dismissing a claim or defense or determining a central issue in the litigation unless the court finds that the party acted willfully.

3. *See, e.g., Underwriters at Lloyd's London v. The Narrows,* 846 P.2d 118, 119 (Alaska 1993); *Schandelmeier v. Winchester Western,* 520 P.2d 70, 74–75 (Alaska 1974).

ing his trial, it would not necessarily follow that the court would have proceeded to enter an ex parte default judgment against him—especially a judgment in the full amount claimed by the Post.

Under Alaska's Civil Rules, a default and a default judgment are two separate creatures and are governed by different requirements.[4] Civil Rule 55(a) allows the trial court to enter a default sua sponte. In contrast, Rule 55(c) only allows the court to enter a default judgment upon proper motion. Although the rule allows trial courts to accept ex parte motions for default judgment, it grants them discretion to require that such motions be properly noticed. And if the trial court finds any uncertainty on the issue of damages, the rule authorizes the court to demand further evidence, provides for a hearing, and grants broad discretion to deny entry of a default judgment.[5]

We have previously emphasized that these procedural protections are necessary because, "in the interests of justice, there must be some degree of assurance that plaintiff's claim is valid and not false or frivolous."[6] We have likewise recognized that a trial court's failure to exercise available discretion amounts to an abuse of that discretion.[7] Yet here, Post 28's failure to file the requisite motion left the superior court with no occasion to follow the proper procedures for entering a default judgment or to exercise the discretion they would have permitted. The absence of a motion reduced the entry of judgment to a ministerial act: the superior court mechanically entered a final judgment totaling over $137,000 without any indepen-

dent consideration of the record or the merits of Post 28's claim, as would have been required under Rule 55. Given these circumstances, it seems untenable to affirm the superior court's summary judgment ruling—which at most evidenced the court's willingness to declare a default—by treating it as a discretionary ruling that was never formally requested or actually considered.

Nor can this problem be cured by speculating about what the superior court might have done had the issue been properly raised. As the record now stands, there is good reason to suspect that, if the trial court had actually considered the issue, as a properly filed motion for summary judgment would have required it to do, the court may not have entered a default judgment without demanding additional evidence—at least not a judgment in the full amount claimed. From the verified information in the record it appears that Post 28 based its claim mainly on the allegation that Snyder wrote a series of checks to himself while serving as the Post's financial officer.[8] Yet uncontradicted evidence precludes drawing any inference of impropriety from this conduct alone: According to Post 28's own CPA, Owen Freeman, it was "a usual and customary practice" for Post 28's financial officers to pay business expenses from their personal funds and reimburse themselves for their payments. Because verified record evidence fails to establish a prima facie claim for damages, let alone for the full amount claimed by the Post, I see no reasonable basis for predicting that, if the default judgment procedures re-

---

4. *See* Alaska R. Civ. P. 55(a)-(c).

5. *See* Alaska R. Civ. P. 55(c)(1); *Brown v. Lange,* 21 P.3d 822, 825 n. 7 (Alaska 2001) ("Although no Federal Rules of Civil Procedure are worded exactly the same as Alaska Civil Rules 55(a)(1) or 55(c)(1), the similarities between the federal and the Alaska schemes make it appropriate for us to look to the federal case law for guidance."); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2685 (3d ed. 2005) ("When an application is made to the court ... for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered.").

6. *Guard v. Benson,* 438 P.2d 219, 221 (Alaska 1968).

7. *Cf. Alaska Cent. for the Env't v. Rue,* 95 P.3d 924, 932 (Alaska 2004) ("We have recognized that 'outright refusal to consider the various alternatives available as a matter of discretion ... is a failure to exercise any discretion at all.' The commissioner's refusal here to consider any scientific information except taxonomic classification in the 'technical sense' amounted to an abuse of discretion.").

8. The only other verified information in the record suggesting misconduct was an allegation that, at some unspecified later time, Snyder was asked to produce receipts to back up these checks but said that he had given them to the Post's accountant—an assertion that Freeman denied in his deposition.

quired by Civil Rule 55 had been followed, the superior court would have automatically entered judgment against Snyder for the full amount claimed.

The opinion nonetheless reasons that there was no need for supporting evidence here. Citing *Syndoulos Lutheran Church v. A.R.C. Industries, Inc.,*[9] it maintains that, because Snyder could properly have been held in default, the superior court was authorized to enter a default judgment against him based solely on "the well pleaded allegations" of the Post's complaint. But *Syndoulos* fails to support this proposition; indeed, it cuts against the propriety of dispensing with a trial on damages in a situation like Snyder's.[10]

In *Syndoulos*, the trial court, despite holding the defendant to be in default, actually did conduct a post-default trial on damages; and on appeal, over the plaintiff's objections, we expressly recognized that, despite the default, the defendant had the right to contest the issue of liability at his damages trial by disproving the complaint's allegations:

> We interpret [Civil Rule 55(c)(1)] as permitting the superior court to question a defendant's liability after a default has been entered against him. If the court determines that in order to enter the judgment it is necessary for the plaintiff to present evidence supporting one or more of the plaintiff's allegations and if the plaintiff is unable to adduce any evidence tending to support the questioned allegations, then a judgment should be entered dismissing the plaintiff's complaint.[11]

Under *Syndoulos*, then, Snyder should at least have been given an opportunity to defend himself at a trial on damages before a default judgment could be entered against him.

I therefore dissent.

---

9. 662 P.2d 109 (Alaska 1983).

10. In any event, given Civil Rule 9's provision requiring claims of fraud to be pleaded with particularity, it seems questionable to assume that the conclusory charges in the Post's complaint would qualify as "well pleaded allegations" of fraud establishing a liquidated damages claim for the full amount.

11. *Syndoulos Lutheran Church,* 662 P.2d at 112 (internal citations omitted).